## PHIDELIA REYNOLDS et al. v. EDWIN E. REYNOLDS, Appellant.

### Division Two, April 11, 1911.

1. **SETTING ASIDE DEED: Wrong Theory: Right Result.** Notwithstanding there were no facts to support the finding of the trial court that the defendant agreed, by the terms of the deed of trust executed by him, that, in the event he should fail to support his parents, their warranty deed to him should be void; and notwithstanding the court's finding that the land was held in adverse possession by the grantors after the deed was made is supported neither by the facts nor the law, yet if the judgment of the trial court setting aside the warranty deed can be sustained on any theory supported by the facts, it will be sustained, since the case is one in equity, and these errors do not affect the substantial rights of the parents.

2. **COVENANT: Subsequent Condition: Breach: Rescission.** If by construing together a warranty deed from parents to a son, and a concurrent deed of trust by which, as the expressed consideration for the warranty, he agreed to support and maintain them during their lives, the agreement to support is seen to be a covenant, then the warranty deed should not be set aside, but the grantors should be left to pursue their proper remedy, namely, to sue on the covenant, and, if necessary, to foreclose the deed of trust. But if the agreement to support was a condition subsequent, then the grantors may maintain their suit to rescind, and, on proof that the agreement has been wholly unperformed, have both the deed and deed of trust set aside.

3. **———: ———: Rescission: Construction of Contract: Intention: Forfeiture.** Whether or not an agreement to support by a grantee in a deed is a subsequent condition or a covenant, must be determined by the intention of the parties as gathered from the language used, reading it in the light of the facts. Where there is a warranty deed and a deed of trust back to the grantors, given in pursuance of an agreement by the grantee to support the grantors, both must be read together as a part of the transaction and they must be read in the light of the sur-

rounding circumstances, keeping in mind the object sought to be attained. If yet the intention is doubtful the contract will be construed as a covenant, and not as dependent upon a subsequent condition, because a breach of the condition works a forfeiture, and forfeitures are not favored.

4. **CONDITION SUBSEQUENT:** Warranty Deed: Rescission. Where a warranty deed recited "a consideration of five hundred dollars, to be paid by the grantee in maintenance," and the grantee executed a concurrent deed of trust which expressed an agreement to support the grantors during their natural lives and recited said agreement as its consideration, and it is apparent from the facts that the grantee was to have the home place on condition of his supporting the grantors, his parents, and he did nothing more than any other child for two years, when the father otherwise received a considerable sum of money and the son married and moved to his own place, and thereafter did nothing towards their support for many years, and they remained in possession, and all the facts indicate that the agreement had been abandoned almost as soon as made, it will be *held* to be an agreement depending upon subsequent condition, and not being performed, both instruments will be set aside, though neither declared it was to be void for non-performance.

Appeal from Linn Circuit Court.—*Hon. John P. Butler*, Judge.

AFFIRMED.

*A. W. Mullins* for appellant.

(1) The deed was sufficient to and did convey the title to the land in question to the defendant. The consideration of five hundred dollars, recited in the deed to be paid in maintenance, and the separate contract from the grantee to the grantors to support and provide for them during their lives, were both a good and valuable consideration for the conveyance. Anderson v. Gaines, 156 Mo. 664. Taking the most favorable view of the plaintiffs' evidence, there was, at most, only a part failure by the defendant to fully perform and fulfill the contract—certainly no default

by him in that regard for the first two years next after the contract was entered into. But a failure, if any, to comply with the terms of the contract by defendant did not render the deed void. The remedy is by an action at law for damages on the contract, and that remedy is ample because of the deed of trust on the land. McAnaw v. Tiffin, 143 Mo. 667; Anderson v. Gaines, 156 Mo. 664. (2) There is no condition of forfeiture in the deed to the defendant, nor has the contract made by him to support and provide for his father and mother any condition whatever in it to forfeit the title. And even if there had been in the deed or in the contract a condition to forfeit, the right to enforce forfeiture exists only at law; a court of equity never lends its aid to enforce a forfeiture. Messersmith v. Messersmith, 22 Mo. 369; Towne v. Bowers, 81 Mo. 497; Studdard v. Wells, 120 Mo. 25; Lasar v. Baldridge, 32 Mo. App. 362; Moberly v. Trenton, 181 Mo. 637. The so-called finding of the court is absolutely unsupported by the evidence in the case both on the part of the plaintiffs and on the part of the defendant, but contrary thereto. The contract made by defendant is valid and still subsisting and that was and is a good and sufficient consideration for the deed of conveyance to him. And by what mysterious way or manner the title to the land conveyed to defendant was divested out of him and reinvested in said Daniel E. Reynolds prior to his death, is, I think, impossible to understand.

*Bresnehen & West* for respondents.

(1) Daniel E. Reynolds and the plaintiff in this case have been in the actual, open, notorious and adverse possession of the land in controversy, claiming to own the same continuously since about the time of the defendant's marriage in 1887, when his father let him have the other eighty-acre farm. This being true,

the plaintiffs have acquired title to said land by adverse possession. Wilkerson v. Eilers, 114 Mo. 245; Scruggs v. Scruggs, 43 Mo. 142; Ekey v. Inge, 87 Mo. 493. (2) The trial court has found the issue of title by adverse possession in favor of the plaintiffs, and, there being substantial evidence upon which to base that finding, its action in that regard is not open to review by this court. Rice v. Arnold, 58 Mo. App. 97; Corrigan v. Kansas City, 93 Mo. App. 173; Baumhoff v. Railroad, 171 Mo. 120. The case has been fairly tried, all the issues have been determined by the court below in favor of the plaintiffs, and if the court could properly find for them on any ground its finding and judgment should be affirmed. We insist that the finding is for the right party on every issue, and that the judgment should be affirmed.

FERRISS, J.—Suit to set aside a warranty deed to forty acres of land in Linn county, Missouri.

Plaintiff Phidelia Reynolds is the widow of Daniel E. Reynolds, who died intestate in 1893. All the other parties plaintiff and defendant are the children and heirs of said Daniel E. and Phidelia Reynolds. The land in controversy was owned by Daniel E. Reynolds, deceased, he having purchased the same from the Hannibal & St. Joseph Railroad Company in 1883. Defendant, his eldest son, became of age in 1881, and for several years before and after reaching his majority was the mainstay of the family.

On April 24, 1885, defendant's father and mother, the said Daniel E. and Phidelia Reynolds, conveyed to him, by warranty deed, the land in question, the consideration named in the deed being "the sum of five hundred dollars, to be paid by the said party of the second part in maintenance." On the same day defendant executed a deed of trust on said land, as follows:

"This deed, made and entered into this 24th day of April, eighteen hundred and eighty-five, by and between Edwin E. Reynolds, of the county of Linn and State of Missouri, party of the first part, and Ben Wade, the present acting sheriff, and his successor in office, of the county of Linn, State of Missouri, party of the second part, and Daniel E. Reynolds and Phidelia Reynolds, his wife, during their natural life, of the county of Linn, State of Missouri, parties of the third part:

"Witnesseth, that the said party of the first part, in consideration of the debt and trust hereinafter mentioned and created, and of the sum of one dollar to him paid by the said party of the second part, the receipt whereof is hereby acknowledged, doth by these presents grant, bargain and sell, convey and confirm unto the said party of the second part, the following described real estate: Southwest quarter of section 2, township 58, range 18, situate, lying and being in the county of Linn, State of Missouri, to-wit: being the southwest quarter of the southwest quarter of section 2, township 58, range 18, being forty acres.

"To have and to hold the same, with the appurtenances, to the party of the second part, and to his successor or successors in this trust, and to them and their grantees and assigns forever.

"In trust, however, for the following purposes: Whereas Edwin E. Reynolds, the said party of the first part, has this day made, executed and entered into an agreement, which is hereby witnessed by this agreement, that he will faithfully support and maintain Daniel E. Reynolds and Phidelia Reynolds, during their natural lives, with the necessaries of this life, in sickness or health, the consideration for this agreement is that Daniel E. Reynolds and Phidelia Reynolds have this day executed and delivered to Edwin E. Reynolds a good and sufficient deed of warranty to the forty acres described in this instrument, the

consideration for said deed of warranty being the agreement of Edwin E. Reynolds to support them during their natural lives. Now, therefore, if the said party of the first part shall faithfully perform and fulfill said contract hereby entered into by him, then this deed shall be void, otherwise to remain in full force and effect. Witness my hand and seal this 23d day of April, 1885.

"EDWIN REYNOLDS. (Seal.)"

The warranty deed, duly acknowledged, was filed for record February 7, 1887, and the trust deed on December 20, 1905, in the office of the recorder of deeds of Linn county.

According to the testimony of Mrs. Reynolds, her son, the defendant, was twenty-five years of age when the land in suit was conveyed to him. Two years thereafter he married, removed from the homestead, and dwelt with his wife on an eighty-acre tract of land, near by, which was given him by his father, Daniel E. Reynolds. Whether this eighty acres was ever deeded to defendant witness could not remember. She further testified as to the land in dispute: "We always claimed the land as ours, and paid the taxes on it. Since Mr. Reynolds died I have improved it and built buildings on it. There isn't anything there now that was there when he deeded it to Ed., only a few old apple trees. I put all the improvements on it. Ed never said anything about claiming any right to the land. We supposed it was ours, and we thought he took the other eighty. He did nothing to support us after he got married. I couldn't tell exactly what, if anything, he did towards supporting us before he got married. Of course he helped about the work, and he paid money I suppose. I don't remember; I have never charged my mind with it. He paid no board, and lived there as a member of the family. He and the other boy worked there together. I didn't see any difference be-

tween them.'' She stated that her husband, who was
an old soldier, received a pension of six or eight dol-
lars a month in 1887, which was gradually increased
to seventeen dollars a month, and that he also received
a lump sum of eleven or twelve hundred dollars as
back pay; that this money was used to pay debts
previously contracted and for family support; that
her husband died in 1893, and her son, defendant, two
years afterwards, went to Minnesota, where he re-
sided eight years. Upon his return to Missouri he
made his home in Johnson county, where he was re-
siding at the time of the trial. Witness could not say
that defendant paid any debts contracted by her hus-
band, after he received his pension, but that he used
to pay debts before that time. In 1895 defendant
deeded to her forty acres of land which he had pur-
chased from a railroad company in 1888, and upon
which he had placed a mortgage for $250. At the time
defendant conveyed this land to her he was indebted
to her husband on a note for about $480, which note
she surrendered to defendant, and he tore it up. The
land so deeded to her adjoined the forty acres in con-
troversy. Mrs. Reynolds further testified that, after
her husband died, it required her pension and the use
of the two forty-acre tracts of land to support her-
self and her three young daughters. She did not know,
nor was it ever mentioned by defendant, that the land
conveyed to her was intended as a means of support.
The use and rents of the two pieces of land would not,
she testified, be sufficient to maintain her.

Defendant testified in substance that business was
transacted in his name, after he became of age, and
that he was responsible for and paid the debts of the
family; that the last debt paid by him was in 1891,
when he paid a balance due on a note for $58. His
father paid $400 for the land which was conveyed to
him. The forty acres which he deeded to his mother
was purchased for $190 from the Hannibal & St. Jo-

seph Railroad Company, and he placed a mortgage on
it for $250. This land was, in his opinion, worth $600
when he conveyed it to his mother for her use, benefit
and support. Beyond this, he contributed nothing to
her support from the time he left for Minnesota. He
did not remember owing his father a note, nor get-
ting any note from his mother and tearing it up; but
he did remember getting some money from his father,
the amount of which he does not state. He did not pay
it back, but paid debts to that amount. There was no
complaint made of the contract with his father and
mother until about six months before the trial, when
his mother talked to him about it. She never com-
plained to him that she needed anything for support
and maintenance. Defendant did not contradict or
refer to the testimony of his mother to the effect that
defendant's father gave him eighty acres of land about
the time of his marriage, and that defendant built a
home thereon. This land, she stated, was separate
and distinct from the land in controversy.

Two of defendant's witnesses testified that after
defendant was grown, and until his marriage, he was
managing head of the household and that the family
largely depended on him to carry on the business. It
was the understanding of these witnesses that Mrs.
Reynolds claimed the land in question as hers from the
time of her husband's death, and that the taxes were
paid by her. One of the witnesses testified that the
land in dispute was worth from eight hundred to a
thousand dollars when Mr. Reynolds, defendant's
father, died, and that the rental value of this and the
forty acres conveyed by defendant to his mother was
about two dollars an acre per year. Another witness
testified that the use of the eighty acres was worth
about a hundred dollars a year.

The court below found as a fact that the defendant
had ''wholly failed, neglected and refused to perform
his said agreement to support, maintain and furnish

with the necessaries of life the said Daniel E. and Phidelia Reynolds;" also that "the said Daniel E. Rey-, from the 24th day of April, 1885, until his death on the———day of———, 1893, was in open, notorious, exclusive, adverse and hostile possession of said land." The court further found that the defendant, by his written agreement in evidence, agreed that, in the event he should fail to support his parents, the said warranty deed was to become null and void. The court found and decreed as a matter of law that the consideration for said warranty deed had wholly failed, and that said deed was null and void; that the plaintiffs, other than Phidelia Reynolds, and the defendant, upon the death of Daniel E. Reynolds became, and now are, owners of said land in fee as tenants in common, each owning an undivided one-seventh thereof, subject only to the dower and homestead rights of said Phidelia Reynolds. The court further decreed the warranty deed to be a cloud upon the title, and ordered the same removed.

It is objected, and assigned as error, that (1) the finding of facts is not supported by the evidence, and (2) that the evidence is insufficient to support the decree.

The finding of the court that Daniel E. Reynolds held the land in adverse possession is supported by neither the facts nor the law. There was no adverse possession, upon any theory of the case. Nor do the facts support the finding that the defendant agreed, by the terms of the trust deed executed by him, that in event he should fail to support his parents their warranty deed should be void. We cannot understand upon what theory of fact the court made this finding. If by such finding the court meant to give a legal construction to the two instruments read together, such intention is certainly not clearly expressed. However, if the judgment of the court setting aside the warranty deed, and decreeing the respective interests of the par-

ties to the land, can be sustained upon any theory, supported by the facts, it should be sustained, notwithstanding the above erroneous findings of fact.

This is an equity case. We have all the facts before us. We are not disposed to send cases back for retrial because of errors committed which do not affect the substantial rights of the parties. If the decree in this case is for the right party, we will be disposed to let it stand.

The real question in the case is this: Construing the two instruments together in the light of the evidence and the purpose sought to be accomplished, does it appear that the agreement of defendant to support his parents was a condition subsequent? If this question be answered in the affirmative, then, under the finding that the agreement to support was wholly unperformed, the warranty deed should be set aside. The case of Anderson v. Gaines, 156 Mo. 664, cited by appellant, while it refuses to set aside the deed involved in the case because of failure to show a condition subsequent, concedes the right to rescind in a proper case. The court says (l. c. 670): "It was competent for the parties if they had seen fit to so agree to make the performance of the promise a condition precedent to the vesting of the estate, or its non-performance a condition subsequent for which the estate might be divested." So Haydon v. Railroad, 222 Mo. 126, proceeds on the theory that where the promise is a condition subsequent, its breach will authorize rescission, although in that case it was held that the promise was a covenant and not a condition, and therefore rescission was denied. If, on the other hand, the agreement to support was a covenant merely and not a condition, then the suit should be dismissed, and the plaintiff, Phidelia Reynolds, should pursue her proper remedy, namely, suit on the covenant and, if necessary, foreclosure of the deed of trust given to secure same. It is the general rule that conditions subsequent are not

favored in law, and in doubtful cases a clause will be construed as a covenant rather than a condition, because a breach of a condition works a forfeiture, and has the effect of disturbing vested estates. Yet the rule is not a rigid one. The construction must be according to the intention of the parties as gathered from the language used, reading it in the light of the facts.

In the case of Studdard v. Wells, 120 Mo. l. c. 29, BLACK, J., speaking for the court, says: "It is a familiar rule often asserted in the books that conditions subsequent are not favored in the law, because they have the effect, in case of breach, to defeat vested estates; and when relied upon to work a forfeiture they must be created in express terms, or by clear implication. . . . It is also true that the question whether a clause in a deed is a condition or a covenant is one of intent to be gathered from the whole instrument by following out the object and spirit of the deed or contract."

The above is quoted with approval by LAMM, J., in Haydon v. Railroad, 222 Mo. l. c. 139. Judge LAMM says in the latter case, l. c. 140: "We are left to an interpretation of the contract by the good sense of the thing in the light of its subject-matter and language used." He also quotes the following from Freeland v. Mitchell, 8 Mo. 487: "The only principle to be extracted from the numerous cases in relation to the dependence or independence of covenants is, that they are to be construed according to the intention and meaning of the parties and the good sense of the case."

It will thus be seen that the earliest and latest expressions of this court meet in the rule last above formulated, and we may safely take it as a guide in investigating the present case. The two instruments must be read together as parts of the same transaction, and they must be read in the light of the surrounding circumstances, keeping in mind the object sought to be attained. The parties sought to secure

the support of the parents by the son, and in consideration thereof to transfer to the son the homestead. Doubtless this was in expectation that the son would remain at home, and continue to do as he had been doing. It is apparent that the son was to have the farm on condition of his supporting his parents. There was no express condition, nor provision in either deed for forfeiture. The agreement to support went to the entire consideration of the warranty deed. In such case the covenants are held to be mutual conditions. [Union Pac. Ry. v. Ins. Co., 49 U. S. App. 752.] Under the facts, as found by the court, the consideration wholly failed. The defendant, therefore, failed to comply with the condition on which the warranty deed was made. When the son married he sought his own independent future. He moved to the farm which his father gave him. He contributed nothing further to the support of the family. The father had a windfall in the shape of eleven or twelve hundred dollars back pension, received about the time the son left home. From that time on he also received a monthly pension. Doubtless it was felt that the aid of the son was no longer needed. The arrangement for support was practically abandoned. The old folks remained on the farm. The mother is there still. She has paid the taxes, made improvements, and claimed the land as hers. The conduct of defendant during all these years is consistent only with the theory that he had abandoned the contract, and thereby given up all claim to the land.

Applying the doctrine announced above, that the contract is to be interpreted "by the good sense of the thing in the light of its subject-matter and language used," we are satisfied that the good sense of the thing is to hold that these parties contemplated that the son was to get the farm only on condition of support for life; that this condition failing, the warranty deed ought to fail.

The law invoked by appellant upon the proposition that equity will not enforce forfeiture, does not apply in a case like this where the grantors have never been out of possession. There is no occasion for forfeiture or re-entry. We think the decree properly annulled and cancelled the warranty deed, and correctly declared the respective interests of the parties.

The judgment is affirmed. *Kennish, P. J.,* and *Brown, J.,* concur.