(No. 14406.—Decree affirmed.)

THE CHICAGO TITLE AND TRUST COMPANY *et al.* Appellants, *vs.* SOPHIE A. FRIEDLAND *et al.* Appellees.

*Opinion filed October 21, 1922.*

DEEDS—*right to set aside deed is personal and cannot be transferred to executor.* The right of a grantor to set aside a deed upon the ground that the services to be rendered by the grantees in caring for her were not performed is personal to the grantor and cannot be transferred to her executor, legatees or devisees by a provision in her will making disposition of the property and expressing dissatisfaction with the services of the grantees, and a bill filed by the legatees and devisees, and by the administrator with. the will annexed, for the purpose of setting aside the deed, must be dismissed where the charges of fraud and undue influence are not sustained.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

FREDERICK A. BROWN, (ALBERT G. WEBBER, and ROBERT ELDEN MATHEWS, of counsel,) for appellants.

COBURN & BENTLEY, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook county refusing to set aside a deed for a certain piece of real estate known as No. 1351 Thorndale avenue, in Chicago, executed by Ernestine Steinmueller to Sophie A. Friedland, in a suit in which the Chicago Title and Trust Company, Louise Bassey, Leda M. Cruikshank, Tillie Lange, Matilda Lange and Gretchen Lange were complainants, against Sophie A. Friedland, Frank Friedland and Frank Friedland, Jr., appellees.

The following facts were established by the evidence in the record: Philip Steinmueller died testate about July,

1913, and by his will devised and bequeathed all his property to his widow, Ernestine Steinmueller. The property was valued at about $50,000, including their residence at 1302 North Clark street, in Chicago, a three-flat apartment building which had for some time previous to the testator's death been occupied by himself and wife, Sophie A. Friedland and her husband, Frank Friedland, and their nephew, Frank Friedland, Jr., as tenants and who are the appellees in this appeal. After the estate of Steinmueller had been settled, Edward H. Bassey, a son of Louise Bassey and a nephew of Mrs. Steinmueller, became the financial adviser and manager of Mrs. Steinmueller's property at her request, she then being sixty-four years of age, and unable, because of her physical condition, to properly care for and look after her property. Bassey continued as her financial adviser and manager until the month of February, 1916, when she became dissatisfied with his management and appointed Sol Levisohn, an attorney at law, to take the place of Bassey in the management of her property. Previous to the death of Steinmueller Mrs. Friedland and Mrs. Steinmueller were very close friends, and Mrs. Friedland had done many acts of kindness in the way of voluntary services for Mrs. Steinmueller and her husband by ministering to them when ill and by paying friendly visits to her and her husband at other times. This friendship and close relation continued to exist between Mrs. Steinmueller and Mrs. Friedland after the death of Steinmueller, and Mrs. Friedland continued to do many kind acts for Mrs. Steinmueller after the death of her husband. Mrs. Steinmueller was a small and very frail woman, weighing about 100 pounds, but she had a very strong mind and was very intellectual and well understood her wants. She contracted heart disease after her husband's death, and was very desirous and in much need of someone who would stay with her and care for her and look after her household duties, and she needed someone all the time for that purpose. Two of the Lange girls, distant relatives of

Mrs. Steinmueller, stayed with her at various times during
1915 and the early part of 1916.   They could not or did not
stay with her all the time.   During part of the time she had
a girl staying with her who was not related to her.   In June,
1916, realizing that she needed constant attention and care
and being very much attached to Mrs. Friedland, she ex-
pressed her .desire of having Mrs. Friedland stay with her
and care for her the remainder of her life, for which ser-
vices she was willing to and offered to purchase a home for
the Friedlands (the Thorndale avenue property aforesaid)
and in which she would also live with them.   She directed
her attorney, Levisohn, to purchase the property for her,
which he did, paying therefor out of her funds the sum of
$7000 to the owner, George Ickes, subject to an incumbrance
of $6500, which she was also to pay.   On June 22, 1916,
Ickes executed to her his warranty deed for the considera-
tion aforesaid, and on the same date Mrs. Steinmueller exe-
cuted a warranty deed to Mrs. Friedland for the real estate,
both of which deeds were duly recorded by the attorney,
who had also prepared the deeds.   At the same time that
the latter deed was made, an agreement in writing was en-
tered into and signed by Mrs. Steinmueller and Mrs. Fried-
land, in which it was recited that Mrs. Steinmueller was
sixty-six years of age and desired to be relieved of the bur-
den and care connected with housekeeping and to avoid any-
thing that might cause her excitement or trouble in keeping
help to assist her with her household work, and desired to
receive tender care in her declining years, and in consider-
ation of past favors and kindness and the promise of Mrs.
Friedland to maintain and care for her during her life, she
by that contract agreed to convey the property in fee simple
to Mrs. Friedland.   The contract further recited that Mrs.
Friedland accepted the terms and conditions of the con-
tract and that she faithfully promised to carry out the
terms thereof.   From the date of the deeds and contract
until about February, 1918, Mrs. Steinmueller occupied the

lower flat of the property and the Friedlands occupied the upper flat, and during that time Mrs. Steinmueller was cared for by Mrs. Friedland. On November 11, 1916, Mrs. Steinmueller executed a will which had been prepared by Levisohn, by which she gave her household furniture, wearing apparel, jewelry and automobile to Mrs. Friedland. She also bequeathed $1500 in money to Frank Friedland, Jr.; $8000 to her niece, Leda M. Cruikshank, residing at Decatur; $8000 to Levisohn in trust and with the usual duties and powers of a trustee, with directions to pay the income thereof to her sister, Louise Bassey, in semi-annual installments during her lifetime and at her death to pay the principal to the son and daughter of Mrs. Bassey, Edward Bassey and Ella B. Rost, equally; and to Margaretha E. Lange and Tillie L. Lange, her husband's nieces, she gave each $4000. The will also provided for the appointment of Levisohn as executor and trustee and that he receive ten per cent of her entire estate as his compensation. In the spring of 1917 Mrs. Steinmueller had bronchial pneumonia, by which she became very much weakened physically and mentally, and required a great deal of attention thereafter. In January, 1918, she was advised and persuaded by a woman physician to go to California for her health, and she did go, and after remaining there for several months she died, leaving in addition to the property in question an estate of about $35,000, consisting of notes and mortgages. On May 31, 1918, she executed a second will, in which her age is given as sixty-seven years. The will recites that she was of sound and disposing mind and memory and not acting under duress, menace, fraud or undue influence of any person whatever. By this will, after the payment of her debts, she bequeathed all of her property, with one exception, equally to Mrs. Cruikshank, her niece, and Mrs. Bassey, her sister, both of Decatur, Illinois. By the third clause of her will she bequeathed to Tillie and Gretchen Lange, in equal shares, her jewelry, for their kindness and care dur-

ing her last illness; and to Tillie and Gretchen Lange and
Mrs. Cruikshank she bequeathed her clothing and other per-
sonal belongings.   In the fourth clause of the will appears
this language:   "Heretofore I had given to the Friedlands
my property at 1351 Thorndale avenue, in Chicago, under
a contract that they should take good care of me until my
death and which they failed to do and have forfeited their
rights to the same, and I herewith authorize my executor
hereinafter named to re-take said property and restore the
same to my estate and pay them a reasonable sum in cash
for the time of their actual service rendered to me for the
period of one and a half years, deducting the rent for the
period of time in which they occupied the second flat in said
property."   Albert G. Webber, an attorney at law in De-
catur, was named in the will as executor but refused to
qualify as such.   The Chicago Title and Trust Company was
appointed administrator of the estate and qualified, and it is
in such representative capacity that it appears in this suit
as complainant.

The substance of the charge in the bill is, that by undue
influence and false and fraudulent representations the Fried-
lands prejudiced Mrs. Steinmueller against the former man-
ager of her property, Edward H. Bassey, and induced her
to discharge him and appoint in his stead Sol Levisohn as
her attorney and manager; that Levisohn after being so ap-
pointed, and who was really acting in behalf of the Fried-
lands against the interests of Mrs. Steinmueller, wrongfully
and improperly persuaded her to enter into the contract for
her support and care and to deed the property to Mrs. Fried-
land in consideration of said support and care, and that by
the conspiracy of the Friedlands and her attorney she was
unduly influenced to act against her interests and to discard
her former attorney and benefactor.   It is also charged in
the bill that Mrs. Friedland and her husband, both of whom
signed the agreement to support Mrs. Steinmueller, neg-
lected her and failed to carry out their part of the contract.

.It is argued by appellants that there was a fiduciary relation existing between the Friedlands and Mrs. Steinmueller and also between Levisohn and Mrs. Steinmueller, and that the burden of proof rested with the Friedlands to show that the contract for support and maintenance was not secured by fraud and undue influence.   It is not necessary to pass upon the question whether or not a fiduciary relation existed between Mrs. Steinmueller and the Friedlands, as the weight of the evidence in the record is against the charge that any fraud or undue influence was used by the Friedlands or by Levisohn to secure the contract and the deed to the property in question.   The weight of the evidence shows, as already indicated, that Mrs. Steinmueller was of strong mentality and knew what she wanted, and that the proposition of buying the property in question and entering into the contract for support originated with Mrs. Steinmueller, and that she informed Levisohn of her desire and directed him to purchase the property and prepare the necessary deeds for the transfer thereof and the contract for support and maintenance in consideration of her deeding the property to Mrs. Friedland.   She thoroughly understood the contract, and the evidence shows that she was anxious to enter into it and expressed herself as highly pleased with it after it had been executed, and she paid the mortgage incumbrance on the property.   There is some evidence in the record to the effect that Friedland said to Mrs. Cruikshank that if Bassey continued to manage the property of Mrs. Steinmueller it would be wasted, and that it was to her interest to have him discharged and to employ another who would properly look after the interests of Mrs. Steinmueller and properly manage her property.   Mrs. Cruikshank is a relative of Mrs. Steinmueller, and although she declined to take any steps towards having Bassey removed from the management of Mrs. Steinmueller's property, there is absolutely no proof in the record that Bassey was not mismanaging her property and that the representations or charges

of Friedland that he was not properly managing the property were untrue. Neither is there any proof in the record to the effect that Mrs. Steinmueller was unduly and improperly persuaded to discharge Bassey and to appoint Levisohn as her attorney and manager of her property. She expressed herself pleased with her choice of Levisohn as attorney, and there is no proof in the record at all that he ever abused his trust or did any act against her interests. The proof in the record is positive to the effect that he never at any time asked her or persuaded her to deed the property to the Friedlands and to enter into a contract for her support and maintenance. There is no proof to the contrary to be found in the record, and the charge seems to be based merely upon suspicion and because of the fact that the contract and deeds were prepared by Levisohn, and because of the further fact that the Friedlands recommended Levisohn to her as a proper person for her to appoint as her attorney and manager.

Outside of the mere declarations of Mrs. Steinmueller contained in her will and similar declarations made by her to other parties out of the presence of the Friedlands, all of which were incompetent, there is little evidence in the record to the effect that the Friedlands failed to carry out their part of the contract or that Mrs. Steinmueller was dissatisfied with the manner in which they carried out the contract up to the time she left this State for California for the purpose of regaining her health. Evidence in the record is overwhelming to the effect that Mrs. Friedland did care for and support Mrs. Steinmueller, with the help of her husband, in accordance with the spirit of the contract. This evidence was given by seven witnesses who testified for appellees, several of whom were former friends and acquaintances of Mrs. Steinmueller of long standing and who visited her frequently from the time the contract for support was entered into, up to the time she left for California. Two of these witnesses were her nurse and her physician, Dr. Frey,

who were thoroughly informed as to the manner in which Mrs. Friedland cared for and maintained Mrs. Steinmueller. Some of the specific complaints made by appellants are that the Friedlands prevented Mrs. Steinmueller's friends from seeing her, compelled her to live alone, refused to give her proper food, and made bitter complaints to her of the trouble she made. The testimony of the seven witnesses for appellees is to the effect that Dr. Frey prescribed a special diet for Mrs. Steinmueller and that Mrs. Friedland conformed in every particular in preparing and furnishing her this food, and that Mrs. Steinmueller made no complaint but expressed herself on many occasions that no one could be better to her,—not even a daughter,—than Mrs. Friedland had been. These declarations of Mrs. Steinmueller were made up to the very day she left for California, and on that day she used similar expressions, and stated that when she regained her health it was her intention to return from California and again live with the Friedlands, where she would have a good home with Mrs. Friedland.

No useful purpose would be gained by further detailing or discussing the evidence, which fully sustains the decree of the superior court dismissing the bill for want of equity. Moreover, it also clearly appears from the record that Mrs. Steinmueller never made any attempt to have the deed and contract set aside at any time after it was made and never expressed such desire until after she went to California, and that expression appears in the will that she made in California, which has already been quoted. Under the holding of this court in *Roche* v. *Roche,* 286 Ill. 336, the right to have the deed set aside on the ground that the contract of the Friedlands had not been performed was purely personal to her and was not transferred to her executor, legatees or devisees.

The decree of the superior court is affirmed.

*Decree affirmed.*