Nellie **POLETTE** and Sarah Graham, Appellants,

v.

Walter G. **WILLIAMS** and Sharon Williams, his wife, Respondents.

No. 54867.

Supreme Court of Missouri, Division No. 2.

July 13, 1970.

Rehearing Denied Aug. 3, 1970.

Earl R. Blackwell, Hillsboro, for appellants.

Roland A. Wegmann, Dearing, Richeson, Roberts & Wegmann, Hillsboro, for respondents.

HENRY I. EAGER, Special Commissioner.

In this equity action two sisters seek to set aside a deed of real estate from their parents to their brother. Another sister was not made a party. We have jurisdiction because title to real estate is directly involved. The trial court found the issues for the defendants, the son and his wife, and entered judgment in their favor. It made no findings of fact, as none were requested.

In the view we take it will not be necessary to state the evidence in detail. In 1953 Alfred G. Williams and his wife, Lillie May, were living in their home on this real estate and had done so for years; their adult son Walter lived with them. He was then single. The parents were elderly and Mr. Williams had not been employed for some years; the son was employed except for certain periods of "layoffs." On October 10, 1953, Alfred G. and Lillie May Williams executed and acknowledged a warranty deed of the property to the son Walter; the consideration stated was "one dollar and other valuable considerations," and the conveyance was made subject to a reserved life estate. The prin-

cipal controversy here arises over the following clause contained in the deed: "As a part of the consideration for the sale of this real estate, the second party binds and obligates himself to provide a suitable home for first parties upon the above described premises and to provide first parties, as long as they both live, with all necessities of life, including food, clothing, shelter, luxuries, medical and hospital attention, drugs and any other items necessary to the comfort and maintenance of first parties. In the event second party fails to fully and faithfully comply with this provision and obligation, title to the above described premises shall revert to first parties, and in such event second party shall forfeit any and all payments made by him upon the purchase price of said real estate."

On the date of this deed Walter executed a note to his parents for $6,000, and a deed of trust on the land to secure the note; he also signed, and presumably delivered to them, his check for $2,000. The note and deed of trust are not among the exhibits, but the record of the deed of trust was produced, and the cancelled check was received in evidence.

In the petition the plaintiffs allege that defendant Walter (the other defendant was his wife) failed to "faithfully comply with his obligation" to provide for his parents and that because thereof the title to the real estate had reverted to the estate of Lillie May Williams for the benefit of plaintiffs; wherefore, plaintiffs prayed cancellation of the deed. The answer denied the substantive allegations of the petition and pleaded affirmatively: that Wanda Thurman, a sister of the plaintiffs, had not been made a party, and that she was a necessary party; that defendant Walter had paid a good and valuable consideration of $8000 to his parents, in addition to complying with the provisions for support, and that he had fully complied with that provision of the deed; that any right of reverter was personal to the grantors and would not descend to their heirs at law.

The deed in question was executed by Mr. Williams by his mark, witnessed by M. C. Matthes who subsequently became and is now Judge of the United States Court of Appeals. The acknowledgment was also taken by him. The evidence showed that in his later years Mr. Williams' vision was very poor. He died on November 11, 1961; Mrs. Williams died on March 20, 1964. Walter married on January 12, 1957, and moved to a house "down the hill" from his parents' home. Cancelled checks of Walter were produced and received in evidence showing the payment monthly from November 10, 1953, to November 9, 1958, of sums varying from $115 to $100; these checks were made to Mr. and Mrs. Alfred G. Williams or to Mr. or Mrs. Alfred G. Williams; all were endorsed and cancelled. The total of these checks was $6,557.50. Walter's wife, Sharon, testified at length and produced other cancelled checks showing the payment by Walter or by her from their joint account of bills for electricity, fuel oil, medical expenses, and miscellaneous purchases, for the period from February 1957 to March 1964. These, she said, were for the expenses of both parents until Mr. Williams died, and thereafter for Mrs. Williams; the total of these checks was $5,782.54. She had known the parents for some years before her marriage to Walter. She further testified, corroborated to some extent by neighbors: that Walter did the outside work on his parents' place, including plowing, putting up hay, etc.; that they took the mother shopping for groceries every week and gave her the necessary money for the groceries; that Walter was at the family home almost every day; that Mr. and Mrs. Williams bought $5,000 of savings bonds in their joint names but that after his death Mrs. Williams put these in the names of herself and Walter. The evidence indicated that Mr. and Mrs. Williams and she, after his death, were comfortable and satisfied, and that they never "wanted" for anything; also that Mrs. Williams expressed satisfaction with the manner in which her son was taking care of her. Plaintiffs'

evidence, much of which was received over objection, was in substance: that the undertaker, at the instance of Walter, procured an order refusing letters of administration on the estate of Mrs. Williams, showing assets of $381.86 in a bank account; that he also presented to the Recorder the $6,000 note of Walter to his parents and procured the release of the deed of trust; that he was paid something less than $1,000 by Walter for the funeral expenses. The gist of this evidence was, generally, that Walter not only got the farm but the savings bonds and most of whatever else his mother had left. A copy of the bank records of a modest checking account of Mr. and Mrs. Williams was received, showing checks or withdrawals by one or both of various sums from 1951 to 1964. The total number of checks drawn were approximately 122, and the balance on the date of Mrs. Williams' death was $381.86. There was evidence for defendants that Mrs. Williams, the mother of Walter, had told a relative that she had things "fixed" so that Walter would get everything, because he had done the work and "kept them up," with similar remarks to another relative. The evidence indicated that the three sisters had done comparatively little for their parents. The sister who was not made a party testified for defendants, telling generally of Walter's care of his parents, and of a meeting of the heirs after her mother's death. It was her understanding that some money was to be divided and that she would get something over $1,700; she said that she still thought she was going to get that.

Aside from the merits, respondents have raised certain questions which must be decided. They are: (1) that the provisions for support and for a reverter were personal to the grantors and may not be enforced by the heirs; (2) that plaintiffs have failed to join all necessary parties in that they omitted the sister who was present and testified; and (3) that the remedy should have been sought in ejectment and not in a suit to cancel.

We consider, first, whether or not the right to enforce a reverter descended to the heirs. Plaintiffs cite two cases which merely hold that an heir may maintain a suit to cancel a deed for fraud, undue influence, etc. This is not our precise point. Herrold v. Hart, Mo., 290 S.W.2d 49; Welpton v. Jameson, Mo., 266 S.W.2d 594. There is considerable disparity and some confusion in the cases. We have determined that the weight of authority and the better rule is that for the breach of a condition subsequent clearly expressed in a deed, the right, or "the possibility of reverter," as it is sometimes called, does descend to the heirs, but that it is not alienable, assignable or devisable. We have no doubt that this provision constituted a condition subsequent; such a condition operates upon an estate already created and vested, and renders it liable to be defeated. 26 C.J.S. Deeds § 147b (2), p. 1050. The estate here had vested, id., Davis v. Austin, 348 Mo. 1094, 156 S.W.2d 903, subject only to divestiture. Distinctions are sometimes made between deeds which contain mere promises of support and those which actually condition the estate granted upon the performance of a condition expressed. Reynolds v. Reynolds, 234 Mo. 144, 136 S.W. 411; Anderson v. Gaines, 156 Mo. 664, 57 S.W. 726; Mercantile Bank of Louisiana v. Becker, Mo.App., 43 S.W.2d 862. Here a reversion was clearly expressed in the deed conditioned upon a failure to perform. While the courts generally look upon conditions of forfeiture with disfavor, they must be enforced if clearly expressed.

Defendants cite certain authorities supposedly indicating that the right of re-entry or reversion does not descend to the heirs. In their citation of 26 C.J.S. Deeds § 148, it is stated that only the grantor "or his heirs" can take advantage of a breach of condition. This does not support their position. Defendants cite no Missouri cases. Of the outstate cases we note the following: in some, the promise of support was apparently stated only in a separate contract and was not mentioned in the deed; that could hardly constitute a true condition subsequent. Haslinger v. Gabel, 344 Ill. 354, 176 N.E. 340; Roche v. Roche, 286 Ill. 336, 121 N.E. 621; Chicago Title & Trust Co. v. Friedland, 304 Ill. 248, 136 N.E. 720; Malicki v. Malicki, 189 Minn. 121, 248 N.W. 723. In others the agreement, though stated or referred to in the deed, was considered merely as a promise or covenant constituting a consideration and not a condition. Gamble v. Mosloski, 187 Minn. 640, 246 N.W. 368; Rhodes v. Black, 170 S.C. 193, 170 S.E. 158. In King v. King, 242 Ala. 53, 4 So. 2d 740, the issue involved an Alabama statute and the meaning of the case is not entirely clear insofar as it might concern our case. The issue of the right of the heirs to insist upon a reversion is not really presented unless the claimed right is based upon a condition subsequent *in the deed*.

In Davis v. Austin, 348 Mo. 1094, 156 S.W.2d 903, in which the facts are too complicated to be discussed here, the Court held that where one conveys a base fee determinable on a condition subsequent, the fee thus conveyed is subject to defeat by breach of the condition and there may be a re-entry by the grantor or his heirs. In Farmer's High School Consolidated Dist. No. 3, Johnson County v. Parker, 240 Mo.App. 331, 203 S.W.2d 516, it is said that the right of re-entry on breach of a condition subsequent is descendible, but not alienable. In University City v. Chicago, R. I. & P. R. Co., 347 Mo. 814, 149 S.W.2d 321, although the Court did not expressly decide the question because only an easement was involved, it announced the principle that a deed containing a condition subsequent vests the fee, subject to being defeated by breach of condition and by re-entry by the grantor *or his heirs*; also that such possibility of reverter is inalienable and cannot be devised but that it is descendible. See also, Donehue v. Nilges, 364 Mo. 705, 266 S.W. 2d 553, 45 A.L.R.2d 1150, for a statement

of the rule. The following authorities indicate that upon breach of a condition subsequent either the grantor *or his heirs* may re-enter or enforce a reversion, and they seemingly make no distinction in this regard between a condition requiring the support of the grantor and other conditions subsequent. Manning v. Street, 279 Ky. 253, 130 S.W.2d 735 (noting a conflict but approving the rule of descendibility); Dyer v. Siano, 298 Mass. 537, 11 N.E.2d 451; Trustees of Calvary Presbyterian Church of Buffalo v. Putnam, 249 N.Y. 111, 162 N.E. 601; Riverton Country Club v. Thomas, 141 N.J.Eq. 435, 58 A.2d 89, affirmed 1 N.J. 508, 64 A.2d 347; 26 C.J. S. Deeds § 148; Vanndale Special School Dist. No. 6 v. Feltner, 210 Ark. 743, 197 S.W.2d 731; Milan v. Towner, 229 App. Div. 428, 243 N.Y.S. 483; 33 Am.Jur., § 208, p. 688 et seq.; 60 L.R.A. Note, 764; 23 L.R.A.,N.S., 232; A. P. White, Executor v. Bailey, 65 W.Va. 573, 64 S.E. 1019. In 33 Am.Jur., Deeds, § 209, supra, it is said that the right of re-entry on breach of condition subsequent is not extinguished by the death of the grantor but that it passes to his heirs, even when they are not named in the deed. Thus, as already indicated, we conclude that the right to enforce a reverter for breach of condition descended to the heirs of Mr. and Mrs. Alfred G. Williams.

█ █ Defendants, as indicated, also say that plaintiffs should have filed an action in ejectment and not a suit to cancel the deed. A suit in ejectment is, of course, the proper action in which to test the right to possession. While it may seem illogical to permit a suit to cancel a deed after the grantee has held title for some years, as here, it is no more illogical in this case than in the multitude of actions to cancel on account of fraud or undue influence, where cancellation is the accepted remedy. And in many of the cases cited above regarding the descendibility of the right or possibility of reverter, the form of the actions was to cancel the deeds, and such was permitted without question. We hold

that such an action will lie, but, of course, if it should ever be successful it might still be necessary to file a suit in ejectment to gain possession.

█ We now reach the contention that the suit must fail because a necessary party was not joined. As already stated, one sister (daughter of the grantors), Wanda Thurman, was not joined, either as a plaintiff or a defendant. She was present at the trial and testified, but "it has not been demonstrated that" she would be bound by the judgment. Buford et al. v. Lucy et al., Mo., 328 S.W.2d 14, loc. cit. 19. There is nothing in the record to indicate that she was legally in privity with plaintiffs or defendants. Our Rule 52.04, V.A.M.R. permits one who should join as a plaintiff but refuses to do so, to be made a defendant. That Rule also provides that all "persons having a joint interest shall be made parties * * *," and that the Court may order them brought in by amendment or by a supplemental petition. It did not do so here. There can be no question but that all three of the sisters had a joint interest in the subject matter of this litigation; if the deed had been set aside the title would have reverted to all four heirs jointly.

In Buford et al. v. Lucy et al., Mo., 328 S.W.2d 14, one Copeland died testate, leaving as his devisees and heirs his widow, three nieces *and others*. Some years later the widow deeded away the real estate in question, supposedly under powers granted her in the will. The plaintiffs were the three nieces and they insisted that she had no such power; the suit was entitled as one for a declaratory judgment, to construe the will, cancel the widow's deed and to quiet the title. The trial court granted the relief requested, vesting fee simple title in "the heirs." On appeal this Court held: that the suit was actually one to quiet title and cancel the deed, and not merely an action for a "declaratory judgment"; that the plaintiffs were not the only heirs, though the record was not definite as to how many or whom the others

were; and that all persons having a material interest in the subject matter of a suit to quiet title should be made parties, "so that there may be a complete decree, which will bind all of them" (citing sundry cases). The Court further held: that a necessary party is one who has a direct and immediate interest in the subject matter and who, if not joined, would have the right to re-litigate the questions; that re-litigation of issues is one of the evils sought to be avoided by our requirement for joinder of necessary parties, that the other heirs were necessary parties, since all the heirs would be tenants in common, and those not joined would be entitled to claim an interest. In that case the Court reversed the judgment for the three plaintiffs and remanded the case with directions to permit the plaintiffs to bring in the other necessary parties. The nature and type of the suit in that case is very closely analogous to ours.

■ There can be little or no doubt that the other sister (daughter) was a necessary party in the present case. Among other cases denying relief to plaintiffs who had failed to bring in all necessary parties, see: Peters v. McDonough, 327 Mo. 487, 37 S.W.2d 530; Wittels v. Dubinsky, Mo.App., 343 S.W.2d 644; Lenhardt's Estate v. Lenhardt, Mo.App., 322 S.W.2d 170, and Shepherd v. Dept. of Revenue, Mo.App., 377 S.W.2d 525. In Peters and Wittels, supra, the omitted parties held joint interests in personal property; Lenhardt involved a money claim against an estate. In Lenhardt a judgment for defendant was affirmed, in Wittels a judgment for defendants was directed by the Court of Appeals, and in Peters a judgment for the plaintiffs was reversed, all because the plaintiffs (not being all of those jointly interested) had failed to establish a right to recover. The courts in those cases did not discuss the possibility of future litigation by the parties omit-

ted, but we may suppose that similar holdings would have followed in such event,—namely, that *some* of those jointly interested could not maintain a suit. These cases might conceivably justify an affirmance here of the judgment for defendants, upon the ground of the absence of a necessary party, but they all involved the right to money or personal property. We have determined to follow the procedure adopted in Buford et al. v. Lucy et al., supra, although the judgment reversed there was for the plaintiffs, whereas the one in our case is for the defendants. There is a valid distinction between cases involving title to real estate and those involving rights to personal property. In the former, litigation involving the title becomes a matter of record and all interested parties must be bound by any judgment in order to establish a clear title.

We hold that Wanda Thurman was and is a necessary party. The judgment is reversed and the cause remanded with directions to permit the plaintiffs or defendants, by proper pleadings and summons if necessary, to join her as a party plaintiff or defendant. We note also that defendants could have insisted in the trial court that she be joined as a party, had they so desired. They pleaded the point but the record shows no further steps calculated to get such action in that court. We observe, however, that this reversal of the judgment is not to be considered, directly or indirectly, as an inference that the evidence (which we have read) establishes a case justifying the cancellation of the deed in question on the merits.

It is so ordered.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.