Patricia TYSON, Respondent,

v.

CHICAGO TITLE INSURANCE COMPANY, Appellant.

No. WD 72673.

Missouri Court of Appeals, Western District.

Sept. 27, 2011.

William L. Sauerwein and James Adam Stockberger, St. Louis, MO, for appellant.

Timothy J. Murphy, Kansas City, MO, for respondent.

Before Division Two: JAMES M. SMART, JR., P.J., MARK D. PFEIFFER and CYNTHIA L. MARTIN, JJ.

JAMES M. SMART, JR., Judge.

Chicago Title Insurance Co. ("Chicago Title") appeals the circuit court's entry of judgment in favor of Patricia Tyson, Respondent, on her petition for damages for negligence. We reverse.

### Statement of Facts

This case involves switched legal descriptions in relation to two properties (two units of a duplex) located in Jackson County, Missouri, with street addresses of 106 and 108 SW Donovan Rd., Lee's Summit. For many years, the two properties were each apparently identified in their respective "chains of title" by the legal description of the other property. The misidentification was not discovered for some time and resulted in the filing of a quiet title action, which subsequently led to the current suit on appeal.

On February 13, 1993, Dianne Lindwall and three co-owners ("the Lindwall group") purchased the duplex located at 106 SW Donovan and received a general warranty deed, which was recorded in the Jackson County records on February 19, 1993. The deed received by the Lindwall group identified the property conveyed as "106 SW Donovan" and "Unit 61." However, the proper legal description for 106 SW Donovan, and therefore what should have been listed in the Lindwall deed, was "Unit 60."

On January 3, 2003, David Myers purchased "108 SW Donovan." The deed he received referred to it as "Unit 60." However, the correct legal description for 108 SW Donovan is "Unit 61." In connection with his purchase of 108 SW Donovan, Myers executed and delivered a deed of trust in favor of ABN AMRO Mortgage Group, Inc. ("ABN AMRO") dated January 3, 2003, which incorrectly also identified the encumbered real property as "108 SW Donovan" and "Unit 60." Both the

Myers deed and the ABN AMRO deed of trust, identifying the insured property as "Unit 60," were prepared and insured by Stewart Title Insurance Co. Appellant, Chicago Title Insurance Co., did not have any involvement with the preparation, execution, delivery or recording of either of these deeds.

In February 2006, Myers listed his unit for sale. An offer was made and accepted, and a contract was signed by Myers and Sharon Dean, the prospective buyer. Under the contract, Myers was obligated to deliver a commitment of title insurance to Dean. Myers' real estate agent contracted with Chicago Title for the insurance commitment. Chicago Title conducted a title search on 108 SW Donovan and issued a title commitment in favor of Dean. In preparing the title commitment for Dean, Chicago Title discovered that the legal descriptions for 106 SW Donovan and 108 SW Donovan were reversed. The title commitment prepared for Sharon Dean set forth certain conditions which Chicago Title required to be met before it would close the sale to Dean. The title commitment provided as follows:

> NOTE: the ATTENTION was brought to us, that David E. Myers, the seller on the application currently occupies the property known as "Unit 61, Braeside Park Ninth Plat", with the address listed as "108 SW Donovan Road". Instead the Deed of which he acquired the property reads "Unit 60, Braeside Park Ninth Plat, . . ."
>
> NOTE: the "Lindwall", "Murphy" and "Burden" should own "Unit 60, Braeside Park Ninth Plat". Instead the Deed of which they acquired the property reads as "Unit 61, Braeside Park Ninth Plat". In this regard, we require a properly executed Warranty Deed from Dianne Lindwall, Marcia Murphy, and Janice Burden and spouse(s), if any, vesting fee

simple title in David E. Myers, with the legal description as "Unit 61, Braeside Park Ninth Plat, . . .". [sic] And a properly executed Warranty Deed by David E. Myers and spouse, if any, vesting fee simple title in Diane Lindwall, Marcia Murphy and Janice Burden, as Joint Tennants [sic], with the legal description as "Unit 60, Braeside Park Ninth Plat, . . ."

To satisfy compliance with the requirement set forth in the title commitment, Chicago Title prepared a corrective warranty deed from the Lindwall group to Myers with the legal description for Unit 61, and one from Myers to the Lindwall group for Unit 60. On March 22, 2006, Myers executed a general warranty deed in favor of the Lindwall group conveying title to Unit 60, and delivered the same to Chicago Title. On April 5, 2006, the Lindwall group executed a general warranty deed in favor of Myers conveying title to Unit 61 and delivered the same to Chicago Title. The foregoing general warranty deeds are hereafter collectively referred to as the "Corrective Vesting Deeds."

Prior to the recording of the Corrective Vesting Deeds, but subsequent to their delivery, Chicago Title was informed by Myers' real estate agent that the deal between Myers and Dean had been cancelled. Thereafter, Chicago Title returned the escrow money to Dean. When the sale between Myers and Dean was cancelled, Chicago Title held the Corrective Vesting Deeds to record in connection with any future sale by Myers.

Myers, who had been diagnosed with terminal cancer, continued efforts to sell his condominium. However, Myers died without selling his condominium. Chicago Title learned from Lindwall that Myers had died. Upon learning of Myers' death, and to correct the property tax issues resulting from the improper legal description

for the 106 SW Donovan property, Chicago Title recorded the Corrective Vesting Deeds to correct the errors in the legal descriptions. The Corrective Vesting Deeds were recorded on December 5th and 7th, 2006.

The ABN AMRO deed of trust contained the same defect that Myers' general warranty deed had contained, listing Unit 60 in the legal description instead of Unit 61. However, the deed of trust was not corrected. Chicago Title's local manager stated that prior to Myers' death she had not seen any reason to involve ABN AMRO or its title insurer, Stewart Title, because its lien would be paid off when the expected sale closed. Further, she had not received any instruction to correct the deed of trust.

On January 15, 2007, Respondent Patricia Tyson filed in the probate division a Small Estate Affidavit to establish her title as distributee of the property that belonged to Myers at his death. The Small Estate Affidavit correctly identified the real property owned by Myers as 108 SW Donovan, Unit 61, and showed that the property was subject to the ABN AMRO deed of trust.[1] Following the filing of the Small Estate Affidavit, Tyson became the title owner for 108 SW Donovan, which was still encumbered by the ABN AMRO deed of trust. Tyson did *not* make any payments on that deed of trust, even though she knew it existed, which resulted in a default on the deed of trust. ABN AMRO sought to foreclose on the defaulted deed of trust. However, because the deed of trust identified the secured real property as Unit 60 instead of Unit 61, the foreclosure initiated by ABN AMRO was against 106 SW Donovan, then owned by the Lindwall group.

Having received notice of the foreclosure effort by ABN AMRO on November 13, 2007, the Lindwall group filed a petition to quiet title, in which Tyson[2] and ABN AMRO were necessary defendants due to their claims of interest in 108 SW Donovan and the incorrect legal description contained in the ABN AMRO deed of trust. Chicago Title was not a party to the quiet title action. After mediation, the parties entered into a consent judgment on December 17, 2008, quieting title in the respective properties and correcting the deed of trust. The mediation, in other words, produced the result that could have been produced without the need for litigation.

In the meantime, on October 2, 2008, prior to consenting to the December 17, 2008 judgment in the quiet title action, Tyson filed a petition for damages for negligence against Chicago Title. Being unhappy that she had incurred expenses in the quiet title action, Tyson alleged that as a result of negligent actions, Chicago Title was liable to her for attorneys' fees and costs incurred in the quiet title action. Specifically, Tyson alleged that Chicago Title was negligent in that it "failed to take or complete any action to amend a deed of trust in favor of [ABN AMRO] that is or may be secured by [Tyson's] said real estate[.]" Tyson also alleged that Chicago Title "knew that it had created defects in the title to the subject property[,]" and

---

1. The appendix of the Small Estate Affidavit included a listing of Myers' real and personal property, which included, as part of the legal description for 108 SW Donovan, the following: "Fair Market Value of $118,000.00, subject to first deed of trust to ABN AMRO Mortgage Group, Inc. in the amount of $94,000.00."

2. Tyson was originally named as a defendant in the quiet title action in her official capacity as personal representative of the estate of Myers, deceased, but pursuant to court order, she was later named as a defendant in her individual capacity.

"authorized and/or cooperated with the institution and continued prosecution of a lawsuit against ... Tyson as personal representative of the [Myers] Estate ... [even though she] never has been the personal representative of the Estate[.]" Tyson contends that as a *direct result* of these "negligent" acts, she was required to become a party to the quiet title action, which caused her to sustain damage in the way of attorneys' fees and damage to the title of the subject real estate.

On April 19, 2010, the court conducted a trial in the negligence action and entered judgment in favor of Tyson, and against Chicago Title, in the amount of $11,531.12. The trial court did not recite the specific theory of liability.

Chicago Title appeals.

### Standard of Review

■■■ In a bench-tried matter, a trial court judgment must be upheld unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, the judgment erroneously declares the law, or the judgment erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "As neither party requested and the trial court did not make specific findings of facts and law, the trial court is [presumed] to have made findings consistent with the judgment issued." *Pride v. Lewis*, 179 S.W.3d 375, 378 (Mo.App.2005).

### Analysis

Chicago Title raises three points on appeal. In Points I & II, Chicago Title argues that the trial court erred in entering judgment in favor of Tyson because she failed to prove the two elements necessary to sustain a claim for negligence. Points I & II claim, respectively, that: 1) Chicago Title did not owe Tyson any duty as a matter of law, and 2) Tyson could not and did not establish causation. In Point III, Chicago Title contends that Tyson is not entitled to attorneys' fees, as a matter of law. Because Chicago Title is so clearly entitled to reversal on the dispositive issue of causation, we need not address the other contentions on appeal.

■■■ "In an action for negligence, plaintiff must establish that defendant had a duty to plaintiff, that defendant failed to perform that duty, and that defendant's breach was the proximate cause of plaintiff's injury." *Hecker v. Missouri Prop. Ins. Placement Facility*, 891 S.W.2d 813, 816 (Mo. banc 1995). To recover damages, Tyson was required to plead and prove that Chicago Title's negligence was the cause of her injury and that she suffered damages as a result. *See Boggs ex rel. Boggs v. Lay*, 164 S.W.3d 4, 18 (Mo.App. 2005) ("Actionable negligence requires a casual connection between the conduct of the defendant and the resulting injury to the plaintiff."). "The general test for proximate cause is whether the injury is the natural and probable consequence of the defendant's negligence." *Shifflette v. Missouri Dep't of Natural Res.*, 308 S.W.3d 331, 334 (Mo.App.2010). Stated another way, the defendant's negligence must set into motion the chain of circumstances leading to the plaintiff's injury. *Boggs*, 164 S.W.3d at 18. A finding of proximate cause cannot be based on speculation or conjecture. *Shifflette*, 308 S.W.3d at 334. Further, "the mere fact that injury follows negligence does not necessarily create liability; a plaintiff must show the negligence was the proximate cause of the injury." *Boggs*, 164 S.W.3d at 18. Where the plaintiff fails to make this causal connection between the defendant's alleged negligence and plaintiff's alleged injury, no damages may be recovered. *Stroot v. Taco Bell Corp.*, 972 S.W.2d 447, 449 (Mo. App.1998).

■■ In her petition, Tyson alleged that she suffered damages because "she ha[d]

been caused to incur expenses in the way of attorneys['] fees and other costs." She claimed, and maintains, that these damages were the "direct result" of the alleged negligent acts of Chicago Title. Specifically, Tyson contends that the recording of the Corrective Vesting Deeds necessitated the filing of the quiet title action by the Lindwall group and the naming of her as a necessary defendant. Furthermore, she states that the quiet title action was initiated by other parties following the foreclosure proceedings by ABN AMRO against the "wrong property," which was *not* the "wrong property" until after the recording of the Corrective Vesting Deeds. According to Tyson, the recording of the Corrective Vesting Deeds by Chicago Title created "an anomaly" in the title records, causing the property described in ABN AMRO's deed of trust to be the property owned by the Lindwall group.

Tyson's theory of causation completely ignores reality. The ABN AMRO deed of trust identified the "wrong property" *both before and after* the recording of the Corrective Vesting Deeds. On January 3, 2003, when Myers delivered the deed of trust in favor of ABN AMRO, the deed of trust incorrectly identified the property as "Unit 60" for the legal description.[3] At the time that the Corrective Vesting Deeds were executed and delivered by the respective owners to Chicago Title, and subsequently, at the time the Corrective Vesting Deeds were recorded by Chicago Title, the deed of trust still incorrectly identified the property as "Unit 60." Further, at the time the quiet title action was initiated by the Lindwall group, the deed of trust still identified the property securing it as "Unit 60."

It was the initial drafting of the deed of trust, as to which Chicago Title had no involvement, that resulted in ABN AMRO seeking foreclosure on the "wrong property," which thereafter necessitated the quiet title action. Chicago Title's recording of the Corrective Vesting Deeds had *no* effect on the status of the legal description in the deed of trust. The recording of the corrective deeds was not the proximate cause of the quiet title action.[4] ABN AMRO would have given notice of foreclosure on the "Unit 60" deed of trust, either before or after the recording of the Corrective Vesting Deeds, as this was the legal description in the deed of trust it executed. "Unit 60" is, and was always, the correct legal description of the duplex unit located at 106 SW Donovan, which was occupied by the Lindwall group at the time of the foreclosure. Thus, the foreclosure notice was sent, and would have been sent, to the owners/occupiers of 106 SW Donovan, regardless of Chicago Title's recording of the Corrective Vesting Deeds. The recording of the Corrective Vesting Deeds cannot be deemed to have caused the foreclosure notice as to the 106 SW Donovan property, legally denoted "Unit 60," because the foreclosure notice would have occurred with or without Chicago Title's action.

It was Tyson's actions and omissions that necessitated the quiet title action. If Tyson had accepted the obvious (that the

---

**3.** It appears from the pleadings in the quiet title action that the first mistake in the title records occurred during the original conveyance from the developer, Braeside Park Development, Inc., to the subsequent owners of 108 SW Donovan on November 21, 1984, and 106 SW Donovan on December 21, 1984. This common mistake was not discovered until February 2006 by Chicago Title.

**4.** As the Lindwall group pleaded, "the erroneous legal description contained in the ABN AMRO deed of trust was never corrected and *still* purport[ed] to encumber [their] [p]roperty." (Emphasis added.) There was no question that original ABN AMRO deed of trust encumbered 106 SW Donovan based on the legal description contained within.

mortgage company would not ignore the default, and that the Lindwall group would need to take legal action, and that Tyson would have to be joined to the action), and if Tyson instead had cooperated voluntarily with an amendment of the deed of trust, there would have been no litigation. Tyson was well aware of the deed of trust prior to any legal action being filed. Her Small Estate Affidavit included the correct legal description, "Unit 61," for the 108 SW Donovan property, which Tyson inherited from Myers. It also acknowledged the existence of the deed of trust and the amount owed on the property. Tyson admitted at trial that she knew about both Myers' debt secured by the property and the actual deed of trust prior to any legal action being filed, and yet she withheld payments on the deed of trust, ultimately leading to the foreclosure and quiet title action.

In addition, prior to the filing of the quiet title action, the Lindwall group had contacted Tyson after they received the foreclosure notice from ABN AMRO and asked her to file corrective documents or otherwise to correct the incorrect legal description contained in the deed of trust. However, Tyson refused to participate in correcting the records, forcing the Lindwall group to take action.

Tyson's status as a defendant in the title litigation had no causal relationship to anything done by Chicago Title. The quiet title action would have included Tyson whether or not Chicago Title had recorded the Corrective Vesting Deeds, because Tyson claimed an interest in and title to the property formerly owned by Myers. Tyson was a necessary party under Rule 52.04(a).[5] *See Polette v. Williams*, 456 S.W.2d 328, 333 (Mo.1970) ("[L]itigation involving the title [to real estate] becomes a matter of record and all interested parties must be bound by any judgment in order to establish a clear title."). As a necessary party, Tyson would have been brought into the action filed by the Lindwall group, regardless of Chicago Title's actions in this case.

As a result of the foregoing, Tyson failed to prove that any action or omission of Chicago Title was the proximate cause of Tyson incurring the alleged attorneys' fees and costs associated with the Lindwall legal action. To the extent that Tyson suggests or implies that Chicago Title should have somehow arranged for the deed of trust to be amended, she forgets that she was "in the driver's seat" on that issue. Chicago Title had no independent authority to cause the deed of trust to be amended and would have exposed itself to the risk of litigation by Tyson for intermeddling had it assumed responsibility in that regard. However one looks at it, the attorneys' fees and costs incurred by Tyson were self-inflicted expenses and remain her responsibility.

The long and short of it is that if we were to remove any and all actions of Chicago Title out of the case completely, we would have had the same factual circumstances that resulted in the initiation of the quiet title action. Tyson did not meet her burden of demonstrating causation in fact, much less proximate causation, such that she is entitled to recover from Chicago Title.

### Conclusion

Because the judgment was not supported by substantial evidence, and because the trial court misapplied the law, we reverse the judgment of the trial court.

All concur.

---

5. All Rule references are to Missouri Court Rules 2011, unless otherwise stated.