DETROIT UNION RAILROAD DEPOT & STATION CO. *v.*
FORT STREET UNION DEPOT CO.

Lease—Construction—Reservation—Covenant.

> Complainant leased a portion of its station grounds to certain
> railroad companies which were desiring terminal facilities,
> an arrangement at the same time being made looking to the
> organization of a depot company to acquire additional terri-
> tory and erect thereon a union station. The lease contained
> the following provision: " It is understood and agreed that
> the property above described is and shall be subject to a right
> of way across and over the same for a railroad, to be con-
> structed in the most convenient form for a double track, and
> to be built so as to enable all parties lessees of said station
> grounds to reach any passenger station which may be built
> for use of said lessees;" following which was a description of
> such right of way. A depot company was subsequently
> organized, which acquired land, erected a station building,
> and constructed a double-track railway leading thereto, the
> latter extending over complainant's land along the line of the
> right of way described in the above-mentioned provision; and
> such railway and station were used in common by the lessee
> companies and others associated with them. *Held,* that such
> provision of the lease did not reserve to complainant the
> right of way described therein, but was a covenant between
> the parties to subject the premises leased to the use by all of
> complainant's lessees of a right of way by which they might
> reach the proposed station; and that, so long as such covenant
> was not broken, complainant could not complain of the use
> made of the premises.

Appeal from Wayne; Donovan, J. Submitted Janu-
ary 8, 1901. Decided September 25, 1901.

Bill by the Detroit Union Railroad Depot & Station
Company against the Fort Street Union Depot Company,
the Flint & Pere Marquette Railroad Company, the
Detroit, Grand Rapids & Western Railroad Company, the
Canadian Pacific Railway Company, and the Wabash
Railroad Company, to obtain a construction of a lease.

From a decree for defendants, complainant appeals. Affirmed.

*Fred A. Baker*, for complainant.

*Benton Hanchett*, for defendant Flint & Pere Marquette Railroad Co.

*Alfred Russell*, for defendant Wabash Railroad Co.

*F. A. Nims*, for defendants Fort Street Union Depot Co. and Detroit, Grand Rapids & Western Railroad Co.

LONG, J.   The complainant company was organized under the union-depot act of 1881 (2 Comp. Laws, § 6356 *et seq.*).   Its station grounds bordered on the Detroit river, and extended from Twelfth street westerly nearly to Eighteenth street, and were bounded on the northerly side by River street (sometimes called Woodbridge street). October 20, 1881, complainant made a lease to the Wabash, St. Louis & Pacific Railway Company of a portion of its station grounds lying next to the river, describing the portion leased by metes and bounds, and reserving to itself out of the description within said metes and bounds grounds for the erection of an elevator, and for a wharf on the river, and for tracks leading to the elevator and to the wharf, which tracks were to be used in common by said lessee and other railroad companies.   It also leased to said railway company the right to use in common with other railroad companies the right of way from Eighteenth street to Delray.   The lease provided for the construction by complainant of a passenger depot at Twelfth street, with tracks leading thereto, to be used in common by said lessee with other railroad companies.   A small passenger depot was built, as provided in the lease, at Twelfth street, and from 1881 to 1889 no other railroad company leased or used the complainant's grounds.

In 1887, and prior thereto, the Flint & Pere Marquette Railroad Company and the Detroit, Lansing & Northern Railroad Company, by arrangement with the Michigan

Central Railroad Company, made use of the depot facilities of the latter company at its Third-street depot, both for freight and passenger service. At that time also the Flint & Pere Marquette Railroad Company was seeking to secure an independent terminal in Detroit. In this state of affairs, the complainant, through James F. Joy, who was its president, sought to induce the Flint & Pere Marquette Railroad Company and the Detroit, Lansing & Northern Railroad Company to lease from complainant the portion of its depot premises that had not been leased to the Wabash, St. Louis & Pacific Railway Company, together with the right to use in common with other companies the tracks leading to the elevator and to the wharf, and the unleased portion of the right of way running to Delray. Considerable correspondence was had between Mr. Joy, for and on behalf of complainant, and Mr. Mulliken, who was the general manager of the Detroit, Lansing & Northern Railroad Company, and Mr. Crapo, president of the Flint & Pere Marquette Railroad Company, in relation to the matter, and also concerning the construction of a union depot to be built at the corner of Third and Fort streets. This correspondence finally culminated in a contract drawn by Mr. Joy, and executed by the complainant and the Flint & Pere Marquette Railroad Company and the Detroit, Lansing & Northern Railroad Company January 3, 1889. An arrangement was also made for the incorporation of what is called the "Fort Street Union Depot Company," and for the erection of a depot. This bill is filed to obtain a construction of the third clause of this agreement of January 3, 1889. This clause reads as follows:

"It is understood and agreed by the parties hereto that this lease, as to the property described in the last preceding clause, is and shall be subject to a right of way across and over the same for a railroad, to be constructed in the most convenient form for a double track, and to be built so as to enable all parties lessees of said station grounds to reach any passenger station which may be built for use of said lessees; such right of way to commence at the westerly

end of said grounds, and to curve northerly and easterly as soon as may be after the tracks enter the said grounds from the west, and running thence to Twelfth street, which said track shall be upon a line which may be designated by the engineers of the Flint & Pere Marquette Railroad Company and of the successors of the Wabash, St. Louis & Pacific Railway Company, consulting with and acting with the engineers of the Detroit, Lansing & Northern Railroad Company: *Provided,* that said double-track railroad, so far as it is constructed with embankment, shall be of the requisite width for a double-track road, and shall have perpendicular banks supported by walls; and, so far as the same is constructed as an elevated railroad, the ground under the same may be used by said parties of the second part and third part hereto for such use as may not interfere with the use of said track and right of way by all the parties interested therein."

The complainant's contention is that by this clause of the lease there was reserved to the complainant from the premises leased the right of way described therein, and that the complainant has a right to compensation for the use made of such right of way by defendants. The contention of defendants is that no right of way was reserved to complainant at all by said clause, but that said clause is a covenant between the lessor and the lessees to subject the premises leased to the use by railroad companies who should be lessees of the premises owned by complainant of a right of way by which such companies might reach the passenger depot contemplated to be built at Third street; and that complainant has no other right or interest under said clause than to enforce the observance of such covenant by the lessees and those claiming under such lessees.

The Fort Street Union Depot Company was organized on August 24th following the execution of the above contract. It filed its articles of incorporation, and during the years 1890, 1891, and 1892 acquired title to its station grounds, built a passenger station, and put down a double-track railway on the grounds so acquired by it. It also acquired a right of way to connect with the station grounds of the complainant. In addition to this, it ex-

tended said double-track railway over the station grounds of complainant on the right of way described in the clause above set forth of the contract of January 3, 1889; and on December 10, 1889, entered into a contract of leasing with the four railroad companies, to wit, the Wabash, Detroit, Lansing & Northern (called in the bill the Detroit, Grand Rapids & Western), Canadian Pacific, and the Flint & Pere Marquette, for the period of 990 years, granting to said four companies the right to use the said station and grounds and right of way to connect with complainant's grounds mentioned in the contract of January 3, 1889. The fifth clause of the agreement between the Fort Street Union Depot Company and the four railroads provides:

"If application be made by other railroads for accommodations in said station, the lessor will promptly notify each of the lessees thereof, and enable them to be heard on such application, and it will not make any arrangements for such accommodations with other railroads without the assent of all the lessees, as at present it seems that the lessees herein named will occupy said station to its full limit."

At the time of the execution of this contract, Mr. Joy was the treasurer of the Fort Street Union Depot Company. The whole scheme for the organization of the company originated with him, and was carried forward by him. He arranged all details, made all the plans, and drafted all contracts in relation to the matter. At the same time he was president of the complainant company, and the largest stockholder therein, owning $500,000 of its capital stock.

The correspondence above referred to commenced in 1887, and finally culminated in the two contracts above mentioned. There is not a suggestion in this entire correspondence, down to the execution of the lease of January 3, 1889, indicating any purpose of reserving to the complainant any right of way or control over any right of way. It is evident that the lease of January 3d would

not have been made without acquiring the passenger station, nor the passenger station have been arranged for without the making of the lease. The passenger station was to be erected for the use of the four railroads, the title thereto to be placed in a corporation to be formed by the parties to the preliminary agreement, consisting of the four railroad companies and Mr. Joy and his friends; the four companies representing four-fifths of the interest, and Mr. Joy and his associates representing the other fifth. The companies were to pay for the use on the basis of their respective wheelage. It was finally arranged that the two companies, the Flint & Pere Marquette and the Detroit, Lansing & Northern, should pay for such rental as their proportion the sum of $30,000 per annum.

In order to raise the money necessary to construct the depot building, a mortgage was given by the Fort Street Union Depot Company on its property. After describing the property by lots and blocks, the mortgage recites:

"Also all its yards, tracks, structures, passenger and freight stations, railroads, and especially its railroad leaving station grounds at Sixth street, and thence southwesterly to River street, near Eighth, and thence along said River street to near Twelfth street, and thence southwesterly, across the lands of the Detroit Union Railroad Depot & Station Company, to the connection with the railroad owned by said Depot & Station Company, extending through the suburbs of Detroit to and across railroads extending from Detroit to Toledo," etc.

This is a distinct statement in the mortgage that the Fort Street Union Depot Company owned the railroad on that date, January 1, 1891, including the right of way in question.

Mr. Crapo was called as a witness, and testified that the third clause of the lease was not a matter of discussion between himself and Mr. Joy; that, when they got to the matter of fixing the lease, "Mr. Joy suggested that the Flint & Pere Marquette and Detroit, Lansing & Northern roads, unless there was some clause, might interfere with the getting of the Wabash up to Third street."

We think the whole correspondence, supported by the evidence in the case, shows clearly that the provision in the lease for right of way was intended to provide means by which the defendant railroad companies should have access to the Fort Street Union Depot passenger station without other charge than the consideration stated in the lease, and that the Fort Street Union Depot Company was created to enable the railroad companies to have the depot facilities which they would acquire and enjoy by means of this right of way. We think counsel for defendants are justified in claiming that it was intended that the lessees should have the right to provide and construct a railroad over such right of way, and that they could permit any other railroad companies, and the Fort Street Union Depot Company, to use such right of way, so long as the parties described in the lease as lessees of the complainant's station grounds were undisturbed in their use of it. It is evident that the terms used in this clause do not import a right of way to the complainant to be used by it, or controlled by it, or to be in any way enjoyed by it by use by itself, or by charging for its use by others. The terms do import that the complainant has such an interest in the use of it by its own tenants that it may compel the execution of the agreement which subjects the right of way to their use. Provisions of like character, relating to the use which shall be made of premises conveyed by deed or lease, are common, and are usually made by a condition or covenant inserted in the deed or lease. The provision of the lease in question is not a reservation, but a covenant. The language of the lease is:

"It is understood and agreed by the parties hereto that this lease, as to the property described in the last preceding clause, is and shall be subject to a right of way across and over the same for a railroad, to be constructed in the most convenient form for a double track, and to be built so as to enable all parties lessees of said station grounds to reach any passenger station which may be built for use of said lessees."

The contention of counsel for complainant is that the provision is a reservation, and that a reservation cannot be made in favor of third parties. The proposition that a reservation cannot be made in favor of a third party may be true, but we need not enter upon a discussion of that question here, as we are satisfied that the clause in controversy is not a reservation, but must be treated as a covenant. By covenant the same provision may be made for the use of property as may be provided for by a condition subsequent; but, if the provision is by covenant, the remedy of the grantor or lessor for breach of covenant is by an action at law for damages, or by suit in equity to compel the observance of the covenant. It is well stated by counsel that in each case it is for the court to determine from the terms of the instrument, and from the circumstances under which the instrument was made, and by the acts and conduct of the parties, what was the intent of the provision, what it was designed to provide for, and whether the provision is a condition subsequent or a covenant. The courts will favor the construction of the provision as a covenant, rather than as a condition, in order that the consequences of a forfeiture of the estate granted may be avoided. It is said in 6 Am. & Eng. Enc. Law (2d Ed.), pp. 500–503:

"As comprehended by this treatise, a condition is a qualification or restriction annexed to a deed or devise, by virtue of which an estate is made to vest, to be enlarged or defeated upon the happening or not happening of a particular event, or the performance or nonperformance of a particular act. * * * Words declaratory of the consideration for and the purpose of the conveyance, and the limitation of the use of the property, or which direct or prohibit the performance of a particular act, do not, of themselves, render an estate conditional. * * * In the construction of a particular provision, the intention of the grantor or devisor governs. * * * The same words may be employed to create a covenant as to create a condition, and, if there is any doubt regarding the intention of the grantor or devisor, courts will incline towards the former construction, for conditions which

tend to destroy estates are not favored, and are strictly construed. * * * Moreover, a condition is always the creation of a grantor or devisor; a covenant may be made by either a grantor or a grantee."

In *Smith* v. *Barrie*, 56 Mich. 314 (22 N. W. 816, 56 Am. Rep. 391), it appears that a deed was made of lands subject to a condition that, if the parties of the second part, their heirs or assigns, sold or kept for sale intoxicating liquors upon the premises, the estate granted should cease. It was said by this court:

" It is perfectly lawful for parties to contract to abstain from the performance of acts proper and legal in themselves, when others with whom they contract may have an interest in their doing so, and in proper cases the contract may be made to assume the form of a condition. * * * Many cases of similar conditions are found in the books, and in none of them has enforcement, either by forfeiture of the estate or by injunction, been refused. The enforcement is subject to the rule that the law favors covenants, rather than conditions; and it inclines to construe the undertakings of parties strictly as against forfeiture."

In *Campau* v. *Chene*, 1 Mich. 400, a deed was made by John Baptiste Campau of land in which a provision was made to pay a debt, and to board, lodge, and clothe the grantor during his lifetime. Also in the deed the grantee promised and obligated himself to keep, board, and clothe decently, until she had reached the age of 18 years, Archange Campau. The suit was in equity, based upon these provisions. It was said by the court:

" The views we have expressed in regard to the covenants in the deed are illustrated and fully supported by the case of *Pownal* v. *Taylor* ( decided in the Virginia court of appeals ), 10 Leigh, 179 ( 34 Am. Dec. 725 ). The owner of a tract of land conveyed it to his nephew in fee, subject to the maintenance and support of the grantor and his sister. The deed contained a covenant by the grantee for such maintenance and support, and declared that the land was to be held therefor, into whose hands soever it might come. But the deed did not state that it was *upon condition* that such maintenance and sup-

port should be furnished, nor was there any clause providing for a re-entry by the grantor. Held, the provision for maintenance and support constituted merely a charge upon the estate, which might be enforced in equity; not a condition, for breach of which the grantor could re-enter as of his former legal estate. In that as well as in this case there was a provision for a third person, and it was held that the third person ( the sister ) instantly acquired a beneficial interest, which she might have enforced by bill in equity. But, if the provision was a condition, then for the breach the grantor might re-enter, defeat the estate, reinvest himself with his original title, and annihilate the vested interest which he had by his own solemn act conferred upon his sister. This cannot be, unless the grantor had expressly reserved the right to re-enter upon failure of the grantee to fulfill the purposes of the grant. These last remarks apply with full force to the provision for Archange in this deed."

See, also, *Martin* v. *Cook*, 102 Mich. 267 (60 N. W. 679); *Avery* v. *Railroad Co.*, 106 N. Y. 142 (12 N. E. 619); *Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440 (26 Am. Rep. 615); *Parker* v. *Nightingale*, 6 Allen, 341 (83 Am. Dec. 632); *Schwoerer* v. *Market Ass'n*, 99 Mass. 285.

We think the court below very properly dismissed complainant's bill. That decree will be affirmed, with costs.

Montgomery, C. J., Moore and Grant, JJ., concurred. Hooker, J., did not sit.