**CITY OF CARTHAGE, JASPER COUNTY, Missouri, Plaintiff–Appellant,**

v.

**UNITED MISSOURI BANK OF KANSAS CITY, N.A., as Trustee of a Trust Created by the Will of Gordon Parsons, and Charles A. Parsons, Defendants–Respondents.**

No. 18583.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 8, 1994.

Application for Rehearing or Transfer to Supreme Court Denied
March 2, 1994.

David C. Dally, Carthage, for plaintiff-appellant.

James R. Spradling, Carthage, Robert H. Freilich, Stephen J. Moore, Freilich, Leitner & Carlisle, Kansas City, for defendants-respondents.

MONTGOMERY, Judge.

The City of Carthage (City), Missouri, appeals from an amended judgment that declared the City "has a fee simple determinable interest" in certain real estate in Jasper County, Missouri. The judgment also declared (a) that Defendants United Missouri Bank of Kansas City, N.A., and Charles A. Parsons [1] hold an interest in the same real estate, (b) that Defendants' interest "is a possibility of reverter," and (c) that a possibility of reverter "is an interest in land that may be conveyed by deed or devised by will."

Summarized, the City argues on appeal that the trial court erred in finding that Defendants had an interest in the real estate at issue because (1) a possibility of reverter is inalienable, unassignable, and cannot be devised, and (2) any attempt to convey or devise a possibility of reverter destroys it.

In 1932, Edna Myers owned the property in question, a 159–acre tract of land. On December 23, 1932, she executed a warranty deed that conveyed the property in trust to the Carthage Chamber of Commerce, Inc. (Chamber). Pertinent provisions of the deed, which contained numerous trust terms and conditions, follow:

> 3. Said land shall be perpetually devoted only to municipal purposes such as airport, public park or agricultural purposes.
>
> . . . .

---

1. The declared interest of United Missouri Bank of Kansas City, N.A., arises by virtue of its being trustee of a trust created by the will of Gordon Parsons. Charles A. Parsons is the sole beneficiary of that trust.

5. Said land shall be known perpetually by a designation which shall include the name "Myers" therein.

. . . .

7. If at the date of the death of [Edna Myers] all the terms and conditions hereof shall have been faithfully and punctually kept and performed by the [Chamber], then the [Chamber] shall convey said land to the city of Carthage, a municipal corporation of Missouri, said conveyance to be made subject to paragraphs 3 and 5 above.

. . . .

9. Should any breach of the terms and conditions contained in paragraphs 3 and 5 occur after the death of [Edna Myers], then this conveyance shall be void, said property shall revert to and become a part of the estate of [Edna Myers] to be disposed of according to the terms and conditions of the last will of [Edna Myers] if she die testate, or to be disposed of according to the laws of descent if she die intestate.

Edna Myers died testate on March 16, 1933. Pursuant to the trust terms, the Chamber conveyed the property to the City on March 25, 1933. The deed to the City stated that "this conveyance is expressly made subject to paragraphs 3 and 5 of the [December 23, 1932] warranty deed. . . ."

Edna Myers' will was admitted to probate on March 23, 1933. It contained a residuary clause, which provided that the residue of her estate would pass to certain named individuals. Neither the City nor Defendants dispute that any interest Edna Myers retained in the 159 acres passed to those individuals by virtue of the residuary clause, if such an interest is devisable.

On March 29, 1960, the residuary devisees executed a quitclaim deed to Gordon Parsons.[2] In that document, the grantors conveyed "any and all rights of reentry and/or forfeiture" they might later acquire due to a breach of condition of the trust created by Edna Myers' December 23, 1932, deed to the Chamber and incorporated in the March 25, 1933, deed to the City.

Gordon Parsons died testate on July 12, 1980. Under the terms of his will, his interest in the subject real estate was distributed to the United Missouri Bank of Carthage as trustee. Later, this bank conveyed the interest in question to the Defendant bank as trustee.

On May 7, 1991, the City filed a petition for declaratory judgment against the Defendant bank, seeking a declaration that the City owns the Myers property in fee simple absolute. The bank answered the City's petition and filed a counterclaim to quiet title to the property, requesting a judgment that it holds "a valid and legally recognizable and protectable future interest" in the property and that this interest "was and is fully alienable, assignable, devisable, and descendible." Subsequently, Charles A. Parsons, the sole trust beneficiary, intervened as a party defendant and counterclaimant.

At trial, the only evidence came from various deeds and records of probate proceedings, as well as a stipulation of certain facts by the parties. One provision of the stipulation stated that from March 25, 1933, through the date of trial, the City had devoted the subject property to municipal purposes such as airport, public park or agricultural purposes and that, during that time, the property had been known by a designation that included the name "Myers."

During the trial, the City took the position that the 1932 and 1933 deeds created a possibility of reverter in Edna Myers and her heirs. The City contended that the 1960 quitclaim deed from the residuary devisees to Gordon Parsons destroyed the possibility of reverter, because such a future interest cannot be alienated, assigned, or devised. As a result, the City claimed ownership of the subject property in fee simple absolute.

On appeal, the City makes those same arguments and also contends that, by attempting to devise her possibility of reverter, Edna Myers destroyed that interest. We note that during oral argument the City said it had no quarrel with the trial court's deter-

---

2. The parties stipulated that the grantors in the quit claim deed are the same persons named in the residuary clause of Edna Myers' will.

mination that the 1933 deed conveyed a determinable fee simple estate to the City. Thus, the first essential question before us is whether a possibility of reverter is devisable and alienable.

We agree with the parties and the trial court that the conveyance to the City created a fee simple determinable. Clearly, Edna Myers' entire estate was conveyed to the City, conditioned upon the use of the property for specified purposes; and, upon cessation of such use, the entire estate would revert to Edna Myers' heirs or devisees. The specific characteristics of a fee simple determinable are discussed *infra*.

Our review of this court-tried case is governed by Rule 73.01(c) and the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32.

 Resolving the City's first point requires an understanding of the type of estate created by the 1933 deed to the City. A determinable fee simple estate [3] automatically terminates upon the occurrence of a specified event or the cessation of use for a specified purpose. *Donehue v. Nilges*, 364 Mo. 705, 266 S.W.2d 553, 554–55 (1954). Upon the creation of this estate, the grantor retains an interest known as a "possibility of reverter." *Id.* Upon the happening of the event by which the determinable fee simple estate is limited, it will terminate and revert to the grantor without any entry or other act. *Chouteau v. City of St. Louis*, 331 Mo. 781, 55 S.W.2d 299, 301 (banc 1932).

 The future interest following a determinable fee simple is different from the one following a defeasible fee simple.[4] The difference is well stated in *Chouteau*.

"The distinction between an estate upon condition, and the limitation by which an estate is determined upon the happening of some event, is that in the latter case the estate reverts to the grantor or passes to the person to whom it is granted by limitation over, upon the mere happening of the event upon which it is limited, without any entry or other act; while in the former the reservation can only be made to the grantor or his heirs, and an entry upon breach of the condition is requisite to revest the estate. The provision for re-entry is therefore the distinctive characteristic of an estate upon condition, and when it is found that by any form of expression the grantor has reserved the right, upon the happening of any event, to re-enter and thereby revest in himself his former estate, it may be construed as such." 2 Devlin: Deeds (3d Ed.) § 974.

55 S.W.2d at 301.

The City relies on three cases to support its contention that a possibility of reverter is inalienable and not devisable. After a careful reading of those cases, we are convinced none of them supports the proposition advanced.

The City first cites *Davis v. Austin*, 348 Mo. 1094, 156 S.W.2d 903 (1941), in which it was said that under the common law a possibility of reverter is not an estate, "but is inalienable, unassignable, and cannot be devised, but is descendible." *Id.* at 905. However, a determinable fee was not at issue in *Davis*. Rather, the two deeds in controversy created a life estate in the first taker, "with a remainder in fee to those who should prove to be the heirs of her body at her death under section 3498, R.S.Mo.1939 (now § 442.-470, RSMo 1986)." *Id.* at 904. Obviously, the Court's discussion of the common law characteristics of a possibility of reverter was dictum and is not precedent for deciding the

---

3. A conveyance of real estate from A to B school "so long as used for school purposes" creates a determinable fee simple in the grantee. Willard L. Eckhardt and Paul M. Peterson, Possessory Estates, Future Interests and Conveyances in Missouri § 11 (1952). Words used to create such an estate are "so long as," "while," "during," "until," and the like. *Id.*

4. A defeasible fee simple is created in the grantee when, for example, A conveys to B and his heirs, "provided that if liquor ever is sold on the premises A or his heirs may reenter and terminate the estate." The future interest that ordinarily follows this estate is a right of entry for condition broken. Eckhardt and Peterson, *supra* note 3, § 13.

instant case. *See Union Elec. Co. v. Platte–Clay Elec. Cooperative, Inc.*, 814 S.W.2d 643, 648 (Mo.App.1991) ("A judicial opinion should be read in the light of the facts pertinent to that particular case and it is improper to give permanent and controlling effect to casual statements made outside the scope of the real inquiry of the case.").

The next case the City relies upon is *Farmer's High School Consolidated Dist. No. 3, Johnson County v. Parker*, 240 Mo. App. 331, 203 S.W.2d 516 (1947). The court in that case cited *Davis* as authority for the proposition that a possibility of reverter is not an estate, is inalienable and unassignable, and cannot be devised. *Id.* at 517–18. Yet, the estate under scrutiny in *Parker* was found to be a defeasible fee, which gives rise to a right of entry for condition broken—not a possibility of reverter. *Parker* does not aid the City.[5]

Finally, the City points to *Polette v. Williams,* 456 S.W.2d 328 (Mo.1970), the most recent Supreme Court decision to state that a possibility of reverter is inalienable and cannot be devised. Like the two previous cases, however, *Polette* did not involve a conveyance that created a determinable fee simple.

The deed at issue in *Polette* contained a clause requiring the grantee to provide grantors a suitable home and to provide proper care and support for the grantors during their lifetime. The clause concluded with the following language:

> "In the event [grantee] fails to fully and faithfully comply with this provision and obligation, title to the above described premises shall revert to [grantors], and in such event [grantee] shall forfeit any and all payments made by him upon the purchase price of said real estate."

*Id.* at 329. The Supreme Court said, "We have no doubt that this provision constituted a condition subsequent; such a condition operates upon an estate already created and vested, and renders it liable to be defeated." *Id.* at 331.

By this language the Supreme Court decided the deed in *Polette* created a defeasible fee simple, which is followed by a right of entry for condition broken. As noted, a possibility of reverter does not follow a defeasible fee simple. Therefore, any discussion by the court concerning possibilities of reverter was dictum.[6]

In an earlier case, another division of the Missouri Supreme Court accurately noted that courts have often confused a possibility of reverter with the right of entry for condition broken. The court said:

> [Grantors] conveyed to the school district a determinable fee, a fee simple estate which automatically terminates upon the occurrence of a specified event or cessation of user for a specified purpose; and there remained in the grantors a "possibility of reverter". *Board v. Nevada School District*, 363 Mo. 328, 251 S.W.2d 20, 24[3, 4]. (That is the possibility of again having the fee simple estate. 2 Tiffany, Real Property (3rd Ed.), § 314, p. 10. Note the kind of "possibility of reverter" instantly involved. Too often, that term is applied both to the interest remaining in the grantor of a determinable fee—the true possibility of reverter—and the right of entry for condition broken retained by the grantor of a fee upon condition subsequent—the "power of termination." See Restatement, Property, § 154, p. 526, and 159, P. 570. In the latter instance, the fee conveyed does not automatically terminate upon condition broken. See *Chouteau v. City of St. Louis*, 331 Mo. 781, 55 S.W.2d 299, 301[4].)

---

5. For an extended discussion, which points out that the *Parker* court incorrectly called the interest left in the grantor a possibility of reverter when it was actually a right of entry for condition broken, *see* Murray Lee Randall, Comment, *Alienability of Rights of Entry and Possibilities of Reverter in Missouri*, 13 Mo.L.Rev. 76 (1948).

6. *See* Lewis M. Simes and Allan F. Smith, The Law of Future Interests § 1860 (2d ed. 1956 & Supp.1993 n. 80), in which the authors remark that *Polette* contains "dictum as to an interest referred to in the opinion variously as a reversion, a possibility of reverter and a right of entry on breach of condition subsequent, which was probably a right of entry."

*Donehue v. Nilges,* 266 S.W.2d at 554–55.[7]

In short, the City relies upon dicta from three cases to convince us that a possibility of reverter is not devisable or alienable. While no Missouri decision appears to have ruled squarely on this point, we believe the correct view is adverse to the City.

## ALIENABILITY

At common law, the grantor of a determinable fee was not vested with any title or interest in the property (until the occurrence of the stated contingency) since the contingency might never occur. Until the happening of the stated contingency, the grantor held a possibility of reverter, but had nothing to convey or devise. 4A Thompson, *supra* note 7, § 1978 at 382–83. As a consequence, various courts have said that at common law a possibility of reverter was not an estate and therefore, in the absence of an authorizing statute, was not alienable, assignable or devisable. *Id.*

The Defendants argue that § 442.020[8] has abrogated any common law restrictions on the alienability of possibilities of reverter. They find support for this assertion in *Brown v. Weare,* 348 Mo. 135, 152 S.W.2d 649 (1941).

Defendants contend that *Brown* is the only Missouri Supreme Court decision that directly holds a possibility of reverter is alienable. They assert that the Supreme Court "found that a possibility of reverter is an 'estate or interest' in land, and thus freely alienable or transferable by virtue of Sec. 3401, RSMo 1939."[9]

In our view, *Brown* is not precedent for the proposition that Defendants seek to advance, because once more the court's statements on the matter were clearly dicta. The *Brown* court rejected the appellant's conten-tion that a conveyance of land to a railroad company for use as station grounds created a determinable fee simple. The court therefore refused to consider appellant's related contention that any resulting possibility of reverter in this property had been destroyed by an attempted conveyance. Commenting on the appellant's second argument, the court said:

> This argument is not pertinent but we observe in passing that by authority of the Restatement of Property, Section 159, a possibility of reverter is said to be transferable and by Section 3401, R.S.1939, Mo. St.Ann. § 3014, p. 1862, the conveyance "of any estate or interest" in lands is provided for.

152 S.W.2d at 653.

Clearly, the Court's statements "in passing" were dicta, because they were beyond the scope of the real inquiry of the case. However, this does not mean the statements are meaningless. "Obiter dicta statements when supported by logic are persuasive, but they are not precedents." *State ex rel. Dunlap v. Higbee,* 43 S.W.2d 825, 831 (Mo. banc 1931).

We believe the statements concerning the possibility of reverter in *Brown* are supported by logic and are persuasive as we consider a proper determination of the instant case.

Since 1936, the Restatement of Property § 159 has held the view that the owner of a possibility of reverter has the power to transfer that interest by inter vivos conveyance. A number of legal scholars share the Restatement's view and have concluded that, even in the absence of statutory provisions, the weight of authority is that possibilities of reverter are alienable.[10] Lewis M. Simes,

---

7. *See* 4A George W. Thompson on Real Property § 1978, at 379–80 (John S. Grimes, 1979 Replacement):

> Some of the courts have confused possibilities of reverter and rights of re-entry and have said, contrary to the general terminology[,] that possibilities of reverter exist after fees upon condition subsequent. Some of the courts and occasionally a judge will treat possibilities of reverter and rights of re-entry as being closely related.

8. Statutory references are to RSMo 1986, unless otherwise indicated.

9. This statute is identical to present day § 442.-020, which provides in part: "Conveyances of lands, or of any estate *or interest therein,* may be made by deed...." (Emphasis added.)

10. For a summary of cases that accord with this view, *see* Simes and Smith, *supra* note 6, § 1860 at n. 80 (2d ed. 1956 & Supp.1993).

Handbook of the Law of Future Interests § 34 (2d ed. 1966).

Besides the Restatement, the *Brown* court also referred to the predecessor to § 442.020, concluding that a possibility of reverter is clearly an "interest" in land within the meaning of that statute. Accordingly, the court suggested that this statute authorizes the conveyance of such an interest.[11] While we find no Missouri case that so holds, we do find substantial authority that § 442.020 authorizes the conveyance of contingent remainders. These cases are instructive as we consider possibilities of reverter.

In *McNeal v. Bonnel,* 412 S.W.2d 167, 169 (Mo.1967), the court said that, without doubt, a contingent remainder is an interest in land within the meaning of § 442.020. The court took that position after considering *Grimes v. Rush,* 355 Mo. 573, 197 S.W.2d 310 (1946), a case involving a deed that, at common law, would have created a fee tail. The *Grimes* court concluded that, by virtue of § 3498, RSMo 1939 (the predecessor to § 442.470), such an estate is deemed to vest a life estate in the grantee, a contingent remainder in the grantee's issue, and a reversion in the grantor. The remainder is contingent upon the grantee having issue and upon the issue surviving the grantee. *Id.* at 311.

In discussing the effect of a quitclaim deed by the contingent remainderman, the *Grimes* court said:

> Contingent remainders of this class were considered merely a possibility of an estate at common law and, for that reason, not alienable inter vivos to strangers. The

modern rule is that contingent remainders are ordinarily alienable. Based upon statutory enactment (Sec. 3401, R.S.1939, Mo. R.S.A., authorizing the conveyance "of lands, or of any estate or interest therein"), Missouri cases rule in broad terms that contingent remainders are alienable. Sufficient reasons, founded on statute and departures of modern life from that existing under the English Feudal system, are stated in *Godman v. Simmons,* 113 Mo. 122, 129, 20 S.W. 972, 973. Present day contingent remainders may not be defeated through the ancient method of fine or recovery. They constitute interests in land of far greater dignity and substance than existed when they were held inalienable at common law. The reasons for restraints on alienation under the feudal system no longer exist.

*Id.* (footnote omitted).

Because obvious similarities exist between a possibility of reverter and a contingent remainder, the rationale in *Grimes* provides a sound basis to treat them the same under § 442.020. As noted in 4A Thompson, *supra* note 7, § 1978 at 378, a "possibility of reverter is always contingent and corresponds to contingent remainders." Clearly, both interests are contingent upon the happening of some specified event and both can cut off an existing estate. While we recognize these two interests are not identical,[12] the common features between these interests in land compel a finding that no sound reason exists to treat them differently within the context of § 442.020.[13]

---

11. For a similar suggestion, *see Smith v. School Dist. No. 6 of Jefferson County,* 250 S.W.2d 795 (Mo.1952), which involved a fee simple determinable estate. The decisive issue did not require the court to determine "whether a possibility of reverter is alienable or assignable in Missouri." *Id.* at 797. Nevertheless, in a footnote immediately following this quote, the court referred to § 442.020 and the Restatement of Property § 159 in such a way as to imply that the statute might abrogate the common law rule.

12. "The possibility of reverter differs from the remainder and from the executory interests in that it arises only in the transferor or his heirs, whereas such other interests are always created in persons other than the transferor." Simes and Smith, *supra* note 6, § 282, at 330 (2d ed. 1956).

13. For a thought-provoking article on the alienability question, see Joel R. Cornwell, *The Alienability of Contingent ·Reversionary Interests,* 49 J.Mo.Bar 373 (1993). After first noting that *Polette, Parker,* and *Davis* (all the cases cited by the City) have used language approving the common law rule on the inalienability of a possibility of reverter, Professor Cornwell correctly points out "that these approbations technically are dicta...." He then offers a marketability of title rationale and a "psychological abhorrence of defeasance" rationale for preserving the common law rule. He indicates, however, that "the determination of whether the conveyancing statute has changed the common law rule will hinge on what is essentially a policy question." He concludes that the Missouri Supreme Court is not

■ We hold that a possibility of reverter is an "interest" in land within the meaning of the statute and is therefore alienable. Accordingly, the trial court properly declared and applied the law.

## DEVISABILITY

■ Under § 474.310, "Any person of sound mind, eighteen years of age or older may by last will devise his real or personal property...." This statute governed Gordon Parsons' devise of his real property upon his death in 1980.

The Missouri statute that governed the testamentary disposition of real property on the date of Edna Myers' death was § 518, RSMo 1929. That section allowed any married or unmarried woman over the age of 21 years, who was of sound mind, to "devise her land, tenements, or any descendible interest herein...."

The only cases the City cites on this issue have been discussed earlier. None of them addresses a factual situation involving the devise of a possibility of reverter. Defendants contend that such an interest is devisable under the current statute and its predecessor.

In a scholarly discussion on this subject, Professor William F. Fratcher concludes that § 442.020 and § 474.310 "were designed to change the archaic rules of the medieval common law." Fratcher, *Exorcise the Curse of Reversionary Possibilities*, 28 J.Mo.Bar 34, 36 (1972). After noting that the Missouri Supreme Court has held that these two statutes establish that contingent remainders and executory interests are alienable by deed and devisable by will,[14] the author states:

> A possibility of reverter differs from a shifting executory interest only in that one is created in a grantor, the other in a grantee. Each is a future interest which may cut off automatically an existing estate in fee simple upon the happening of a condition. What reason in logic or policy exists for holding these statutes applicable

to contingent remainders and executory interests but not to possibilities of reverter?

We find no authority in Missouri holding that a possibility of reverter is or should be treated differently under the statutes than contingent remainders or executory interests. As already demonstrated, a possibility of reverter is an interest in land. Section 518, RSMo 1929, allowed Edna Myers to devise any of her descendible interests in land. In addition, an interest in land is real property, which is devisable under § 474.310. If, as we have already determined, § 442.020 allows the holder of a possibility of reverter to convey that interest, logic dictates that § 474.310 (and § 518, RSMo 1929) must be construed to allow a devise of that same interest. Otherwise, statutory abrogation of the common law rule only as to alienation would result in confusion and inconsistency.

As stated in Simes and Smith, *supra* note 6, § 1903, "it is difficult to see why [possibilities of reverter] should not be devisable if, as is everywhere recognized, executory interests will pass by will." In § 1903, the authors set forth statutes from a number of jurisdictions, which expressly provide that possibilities of reverter are devisable.[15] They also collect cases from numerous jurisdictions that hold a possibility of reverter is devisable; some of these cases are based on statutes containing language similar to § 474.310.[16] In either case, it is obvious that the trend in most jurisdictions is to abrogate any common law restrictions on the devisability of a possibility of reverter.

Certainly, this is the view promulgated by the American Law Institute. The Restatement of Property § 165 provides: "The owner of any future interest ... has the power to make a testamentary disposition ... of his interest ... except to the extent that such disposition is precluded by facts other than the futurity characteristic of such interest." As to proper statutory construction in light of this principle, Comment f of the same

---

likely to decide the question based on antiquated feudal concepts.

**14.** Footnotes 10 and 11 of the article cite the cases so holding.

**15.** *See* n. 20, § 1903 & Supplement.

**16.** *See* n. 21, § 1903 & Supplement.

section (which applies to possibilities of reverter and other interests) states: "When a statute declares broadly, that 'expectant estates,' or 'estates in reversion and remainder,' or 'lands or interests therein' are devisable, this provision is to be construed as stating the same rule as is stated in this Section."

Consistent with the Restatement view, we determine that the two statutes involved here allowed, first, Edna Myers and, later, Gordon Parsons to devise a possibility of reverter as an interest in the real property in question. For the sake of simplicity and consistency, § 442.020 and § 474.310 must be construed to allow a conveyance or devise of such an interest. The trial court committed no error.

In its second point, the City argues that an attempt to convey or devise a possibility of reverter destroys it and that the City now owns the property in question in fee simple absolute. In view of our holding under the first point, this claim has no merit.

Judgment affirmed.

PARRISH, C.J., and SHRUM, J., concur.