Robert WILLHITE and Phyllis Willhite,
Plaintiffs–Appellants,

v.

Ron MASTERS, et al., Defendants–
Respondents.

No. 21872.

Missouri Court of Appeals,
Southern District,
Division Two.

March 19, 1998.

ty, Missouri.[1] The trial court found the issue of title to the property in favor of Caplinger Mills, and entered judgment quieting title to the property in Caplinger Mills.[2] Appellants raise one point of trial court error, discussed below.

## I.

 In a court-tried case the appellate court will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Manard v. Williams,* 952 S.W.2d 387, 389 (Mo.App.1997); *see also Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Under this standard of review, considerable deference is accorded a judgment based on evidentiary and factual evaluations by the trial court. *Jordan v. Stallings,* 911 S.W.2d 653, 656 (Mo.App.1995). On appeal, we accept as true the evidence and inferences therefrom that are favorable to the prevailing party. *Wates v. Joerger,* 907 S.W.2d 294, 297 (Mo.App.1995).

 "The trial court in a quiet title action must 'ascertain and determine the rights of the parties under the pleadings and the evidence, grant such relief as may be proper and determine the 'better' title, as between the parties to the proceeding, though a title superior to the rights of either party may be held by a stranger.'" *Manard,* 952 S.W.2d at 389–90. "[T]he trial court is compelled to 'adjudicate the respective interests of the parties regardless of which party is entitled to it.'" *Id.* at 390. Such a declaration should be entered even where, as here, Caplinger Mills failed to affirmatively request an adjudication of title in itself. *See id.*

## II.

 In 1925, Mr. W.A. Whinrey executed a warranty deed, as party of the first part, conveying to Ozark Utilities Company, party of the second part, the disputed property in

Jerry M. (Jay) Kirksey, Bolivar, for Plaintiffs-Appellants.

Thomas Pyle, Stockton, for Defendants-Respondents.

BARNEY, Judge.

Robert Willhite and Phyllis Willhite (Appellants) brought an action against Respondents Caplinger Mills Bridge Preservation Society, Inc. (Caplinger Mills), a Missouri not-for-profit-corporation, and certain present and former officers, directors and/or members of the corporation and Ron Masters, individually, seeking, *inter alia,* to quiet title to real property located in Cedar Coun-

---

1. Appellants' amended petition, in four counts, originally sought damages for trespass, removal of timber and injunctive relief. Appellants only complain of trial court error relating to the judgment quieting title in the Caplinger Mills Bridge Preservation Society, Inc. Appellants' sole point is silent as to these other pleadings and may be considered abandoned. *See Estate of Huskey v. Monroe,* 674 S.W.2d 205, 208 (Mo.App.1984).

2. *See* instrument recorded in Book 206, page 113, Recorder of Deeds, Cedar County, Missouri, for the legal description of the disputed property.

question. The warranty deed contained certain conditions,[3] in pertinent part as follows:

It is a condition and part of the consideration hereof that the second party will furnish to the first party or his assigns energy to a maximum of forty (40) horse power for the operation of a flour mill at Caplinger Mills where the present flour mill is now located for the purpose of grinding and milling flour meal and feed only said power to be furnished by electricity or by direct connection to water wheel ... the power right and privilege herein reserved by first parties (sic) is a right and privilege belonging to *and to be used exclusively in the operation of a flouring mill and first party shall have the right and privilege to sell assign or transfer said power right with and only with said flouring mill ... if operation of the flouring mill is at any time suspended for a period of two (2) years the power right herein reserved by first party shall cease and be thereafter non-effective;* if second party or its assigns fail or refuse to furnish said forty (40) horse power to said first party as herein provided then this deed to be null and void and property above conveyed shall revert back to said first party or his assigns.

(emphasis added).

At trial, without objection, the trial court received exhibits supporting the respective parties' chronological chains of title and stipulations were entered into by the parties. In one stipulation the parties agreed that Empire District Electric Company, successor in title to Ozark Utilities Company, provided electricity pursuant to the terms of the 1925 deed until 1953.

In the second stipulation, the parties agreed that the Whinrey Flouring Mill burned in 1947, was rebuilt and then burned for the second time on June 3, 1953, and was not rebuilt. Thereafter, there was no provision made for electricity to the mill site.[4]

These stipulations are generally considered as "controlling and conclusive, and courts are bound to enforce them." *City of Jennings v. Division of Emp. Sec.,* 943 S.W.2d 330, 335–36 (Mo.App.1997). "Stipulations designed to simplify or shorten the litigation and reduce expenses to the parties are to be encouraged by courts, and enforced unless good cause is shown to the contrary." *Id.*

### III.

Appellants' sole point of trial court error is set out as follows:

THE COURT ERRED IN DECLARING LEGAL TITLE TO THE REAL PROPERTY IN QUESTION TO BE IN DEFENDANT CAPLINGER MILLS BRIDGE PRESERVATION SOCIETY, INCORPORATED, IN THAT SUCH DECLARATION FAILED TO ENFORCE THE REVERTER CLAUSE CONTAINED IN THE 1925 CONVEYANCE, A(sic) THEREFORE WAS AGAINST THE WEIGHT OF THE EVIDENCE, NOT SUPPORTED BY ANY CREDIBLE EVIDENCE, AND A MISAPPLICATION OF THE EXISTING LAW.

Appellants' Point is violative of Rule 84.04(d), Missouri Court Rules (1997). A point relied on shall state "wherein and why" the ruling of the trial court is erroneous. *Jordan,* 911 S.W.2d at 656 (citing *Thummel v. King,* 570 S.W.2d 679, 685 (Mo. banc 1978)). Although Appellants set out "why" they consider the trial court's decision to be in error, they do not state "wherein" the "testimony or evidence gives rise to the ruling for which appellant contends." *See id.* Although not obligated to do so, we shall refer to the argument section of the brief in an effort to determine the import of the point. *See id.*

As gleaned from their brief, Appellants argue that the 1925 deed contained a "revert-

---

3. As a general rule, a condition in a deed is a "qualification or restriction annexed to a deed ... by means of which an estate is made to vest, to be enlarged or to be defeated upon the happening or not happening of a particular event, or the performance or nonperformance of a particular act." *Detroit Union R.R. Depot & Station Co. v. Fort St. Union Depot Co.,* 128 Mich. 184, 87 N.W. 214, 216 (1901).

4. Witness Jack Masters (who moved near the area in 1993) testified that a "little building sitting there on the back side of the mill site ... has power running to it to this day." A second witness, Mr. Wilhite, stated that the building referred to by Mr. Masters was built in 1983.

er clause" providing that "upon the failure or refusal of the party of the second part to supply electricity to the [flouring] mill, the conveyed property would revert to the party of the first part, or his assigns." Appellants further contend that since it "was stipulated by all parties that the mill had not been provided electricity since 1953 ... the condition [of the deed] went unfulfilled." Hence, Appellants maintain that under the authority expressed by *Donehue v. Nilges,* 364 Mo. 705, 266 S.W.2d 553 (1954), "the property in question reverted to Mr. Whinrey, or his assigns, and ultimately to the Appellants." [5] We disagree.

■ *Donehue* instructs that a determinable fee simple estate is one that automatically terminates upon the occurrence of a specified event or the cessation of use for a specified purpose and will revert to the grantor without any entry or other act. *Id.* 266 S.W.2d at 554–55; *see also City of Carthage v. United Missouri Bank,* 873 S.W.2d 610, 613 (Mo.App.1994).

■ Upon the creation of a determinable fee simple estate the grantor retains an interest known as a "possibility of reverter" which is both alienable and devisable. *Id.* at 613. This future interest should be contrasted, however, with a defeasible fee simple estate, which gives rise to a right of entry for a condition broken, *id.* at 614, i.e., "the right of entry for condition broken retained by the grantor of a fee upon condition subsequent...." *Id.* at 614. "[T]he fee conveyed does not automatically terminate upon condition broken." *Id.*(citing *Chouteau v. City of St. Louis,* 331 Mo. 781, 55 S.W.2d 299, 301 (1932)). It necessarily requires an affirmative act of forfeiture because such a "condition operates upon an estate already created and vested, and renders it *liable to be defeated.*" *Polette v. Williams,* 456 S.W.2d 328,

331 (Mo.1970)(emphasis added). At common law it is neither assignable, devisable or alienable, although it is descendible to the heirs of the grantor. *Id.*

Although the distinction between the two types of estates would otherwise be pertinent to the resolution of the instant matter (the first type of estate is alienable/assignable while the latter is not), we need not reach the question as to the correctness of Appellant's argument that the 1925 deed created a determinable fee simple estate. This is because, as discussed below, the triggering mechanism that would either automatically terminate the estate created by the 1925 deed, or subject it to forfeiture, has been nullified.

"The intention of the parties must be determined from the language used in the deed where the intention is clearly expressed." *St. Joseph Lead Co. v. Fuhrmeister,* 353 Mo. 232, 182 S.W.2d 273, 278 (1944). "It is the totality of the language in the instrument which determines the interest conveyed." *Fischer v. Trentmann,* 672 S.W.2d 139, 141 (Mo.App.1984). "The agreements or conditions of a deed bind a person who accepts the deed, the grantor, a purchaser from the grantor with notice ... and any assignee or grantee of the grantee in whom the estate on condition is vested." 26 C.J.S. *Deeds* § 149 (1956). As a general rule "[f]orfeitures are not favored, and all conditions or provisions in contracts providing for them must be strictly construed." *Robinson v. Cannon,* 346 Mo. 1126, 145 S.W.2d 146, 149 (1940). "[C]onditions subsequent are not favored in law, and are construed strictly, because they tend to destroy estates." *University City v. Chicago, R.I. & P. Ry. Co.,* 347 Mo. 814, 149 S.W.2d 321, 324 (1941). "When relied on to work a forfeiture, they must be created in express terms or by clear implication." *Id.; Miller v. Atchison, Topeka and Santa Fe Railway Co.,* 325 F.Supp. 604, 606

---

5. In *Donehue,* 266 S.W.2d at 554, the Missouri Supreme Court interpreted a provision in a deed conveying realty to a school district. It contained the following condition or restriction: " '[t]o have and to hold unto the parties of the second part and their successors in trust for the use and benefit of the aforesaid' school district *'so long as the aforesaid premises shall be used for a school house site and no longer, and if the aforesaid premises be no longer used for a school house site, then the aforesaid premises shall revert*

to and become the property of the grantors herein or those claiming title to the aforesaid' ... 'by, through or under said grantors.' " *Id.* (emphasis added). Our high court determined that the conveyance constituted a "determinable fee," an element of which is a possibility of reverter (discussed *infra*), which remained in the grantors, and when the school district abandoned the use of the site for school purposes, a fee simple estate in the land automatically passed to and vested in the grantors' heirs. *Id.* at 556.

(E.D.Mo.1971)("conditions subsequent and reverters are not favorites of the law").

■ The clear language of the 1925 deed, emphasized, *supra,* provides in part, that if the "operation of the flouring mill is at any time suspended for a period of two (2) years the power right [the right to receive electrical power] herein reserved by first party shall cease and be thereafter non-effective." By the clear terms of the deed, then, the non-operation of the flouring mill for a period of two years nullified the requirement that the utility furnish electric power to the flouring mill site.

"A condition in a deed is not binding if its performance has been rendered impossible by act of the grantor or the party to be benefited thereby, by act of God, or by prohibition or operation of law." 26 C.J.S. *Deeds* § 156 (1956); *see also Turner v. Turner,* 186 Ga. 223, 197 S.E. 771, 772 (1938)("[c]onditions subsequent in deeds, although not favored, will be given effect, when they are clearly created, are not inconsistent with the other terms of the conveyance, and are not rendered impossible of performance by the act of God or by the subsequent conduct of the grantor").

*Craig v. Beach,* 303 Ky. 516, 198 S.W.2d 220 (1946), is instructive, although it concerned an equitable action to set aside a deed. In *Craig,* grantor conveyed to grantees his home on the condition that the grantees furnish grantor " 'with a home, furnish him with necessary board, clothing, medical care, and provide for his burial at his death.' " *Id.* 198 S.W.2d at 221. Grantees undertook to comply with the understanding, but then grantor departed the home, without advising grantees of his whereabouts. The reviewing court held that "when [grantor] left [the home], of his own accord, not even advising [grantees] that he would return, it put it out of the power of the [grantees] to render the service contemplated...." *Id.* at 222. The court concluded that "the present situation is not the fault of the [grantees] and [grantor] can not now hold them responsible for it as it is one of his own making." *Id.* Similarly, in the instant case, it is undisputed that the flouring mill was never rebuilt following the fire in 1953. Obviously, no electricity was or could be provided to a non-existent flouring operation. *See Howard v.*

*Nicholson,* 556 S.W.2d 477, 481–84 (Mo.App.1977)(parallel discussion of doctrine of commercial frustration); *Grannemann v. Columbia Ins. Group,* 931 S.W.2d 502, 506 (Mo.App.1996)(the doctrine of impossibility excuses a party to a contract from performance when performance is rendered impossible by an Act of God, the law, or the other party); *see also* 17A C.J.S. *Contracts* § 468 (1963). As the trial court stated in its findings of fact and conclusions of law, "[t]here's been no evidence that they [the utility company] took any affirmative action to not do their part of the agreement." More than two years have lapsed since the flouring mill was operated, and by the express terms of the deed the so-called "power right" reserved, ceased and became non-effective.

The trial court's judgment quieting title to the property in Caplinger Mills Bridge Preservation Society, Inc. is supported by substantial evidence. *See Manard,* 952 S.W.2d at 392. The trial court did not erroneously apply the law. *See Id.* at 389.

The judgment is affirmed.

PARRISH, P.J., and SHRUM, J., concur.